ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

pecto 72245

FILED

MAY 3 2011

U.S. COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| BIG OAK FARMS, INC.; MT. LEVEL FARMS, CO., INC.; STALLINGS BROTHERS FARMS; BURKE LAND CO.; EMMITT BURKE, Individually; BRAD HEQUENBOURG FARMS; BRAD AND SUSAN HEQUENBOURG, Individually; TERRY AND JUDY HEQUENBOURG, Individually; WOLF ISLAND FARMS, INC.; MARK AND REBECCA DUGAN, Individually; M & M AG FARMS, INC.; MIKE HUTCHISON AND MARTY HUTCHISON, Individually; JENNIFER T. BAKER TRUST; LINDSAY AND MONICA GOODIN, Individually; JOHN AND CLYDA GOODIN, Individually; STEPHEN AND JANETTE STORY FARMS, INC.; SHEW & PRESSON FARMS, INC.; ROY PRESSON, Individually; RAY PRESSON, Individually; JACK FEEZOR, Individually; THE ORVIL SHEW MARITAL TRUST; STORY FARMS, INC.; STORY LAND, INC.; SUNBURST PLANTATION, INC.; LESTER GOODIN AND JANET GOODIN, Individually; DEE GOODIN, Individually;  on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) ) |
| UNITED STATES OF AMERICA and UNITED STATES CORPS OF ENGINEERS, | ) ) ) ) |
| Defendants. | ) |

11-275 L

Case No: _____

JURY TRIAL DEMANDED

## COMPLAINT – CLASS ACTION

Come now putative Class Plaintiffs, by and through their attorneys, Cook,

Barkett, Ponder & Wolz, L.C. and Cohen Milstein Sellers & Toll, PLLC, and for their

causes of action hereby allege as follows:

## JURISDICTION

1.      This action arises under the Constitution of the Unites States of America, more specifically, the 5th Amendment thereof and the Tucker Act, 28 USC 1346; 1491.

## PLAINTIFFS

2.      Plaintiff Big Oak Farms, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

3.      Plaintiff Mt. Level Farms Co., Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

4.      Plaintiff Stallings Brothers Farms is a farming corporation duly authorized and existing under the laws of the State of Missouri.

5.      Plaintiff Burke Land Co. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

6.      Plaintiff Brad Hequenbourg Farms is a farming corporation duly authorized and existing under the laws of the State of Missouri.

7.      Plaintiff Wolf Island Farms, Inc. a farming corporation duly authorized and existing under the laws of the State of Missouri.

8.      Plaintiff M & M Ag Farms, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

9.      Plaintiff Jennifer T. Baker Trust is the record owner of farm property in Mississippi County, Missouri.

10.      Plaintiff Stephen and Janette Story Farms, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

11.     Plaintiff Shew & Presson Farms, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

12.     Plaintiff The Orvil Shew Marital Trust is the record owner of farm property in Mississippi County, Missouri.

13.     Plaintiff Story Farms, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

14.     Plaintiff Story Land, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

15.     Plaintiff Sunburst Plantation, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

16.     Plaintiffs Emmitt Burke, Brad Hequenbourg, Susan Hequenbourg, Terry Hequenbourg, Judy Hequenbourg, Mark Dugan, Rebecca Dugan, Mike Hutchison, Marty Hutchison, Lindsay Goodin, Monica Goodin, John Goodin, Clyda Goodin, Lester Goodin, Janet Goodin, Dee Goodin, Ray Presson, Roy Presson and Jack Feezor are individuals and residents of the County of Mississippi, State of Missouri.

17.     All Plaintiffs are each owners of real property in the County of Mississippi, State of Missouri, and were such at the time of the levee breach alleged herein.  The property owned by Plaintiffs has been severely damaged by the actions of the Defendants which constitutes a taking under the 5th Amendment of the United States Constitution.

## DEFENDANTS

18.     Defendants are the United States of America and the United States Army Corps of Engineers, an agency of the United States of America.

19.     Defendants are responsible for flood control throughout the United States including, without limitation, the Mississippi River Valley and the Birds Point New Madrid County Floodway.

## NATURE OF THE CLAIM

20.     This is a class action complaint brought against Defendants for, inter alia, inverse condemnation and wrongful taking of the Plaintiffs' property under the takings clause of the 5th Amendment to the United States Constitution. The taking here occurred when, at approximately 10 p.m. on May 2, 2011, the U.S. Army Corps of Engineers intentionally breached the Birds Point levee with a series of orchestrated explosions and inundated approximately 130,000 acres of Mississippi and New Madrid Counties, Missouri with flood waters from the Mississippi River.

21.     The Birds Point New Madrid Floodway (hereinafter Birds Point) is a component of the Mississippi River and Tributaries Project located on the west bank of the Mississippi River in Mississippi and New Madrid Counties, Missouri. The Floodway is just below the confluence of the Ohio and Mississippi Rivers and directly across the river from Cairo, Illinois. Birds Point was established under the authority of the Flood Control Act of 1928. Under the 1928 Act, the Corps of Engineers developed a plan where a front-line levee was constructed to protect Birds Point until the river reached the 55-foot stage on the Cairo gauge at which time the flood water would

4

naturally over-top the front-line levee. This plan was modified in 1965 by Congress in the Flood Control Act of 1965.

22.     Pursuant to the 1965 Flood Control Act, the Corps of Engineers modified the plan raising the front-line levee to 62.5 feet, raising the set-back levee to 65.5 feet and raising the upper and lower fuse plugs of the Birds Point system to 60.5 feet. This plan called for the operation of the floodway by artificial crevassing of the levees by means of explosives only on a certain portion of Birds Point – the upper fuse plugged section.

23.     After approval of the 1965 plan, the government obtained modified flowage easements over a portion of the Birds Point Floodway in order to breach the levee should the river stages at the Cairo gauge rise to 58 feet with the prediction of stages exceeding 60 feet.

24.     In 1983, the Corps of Engineers adopted a newly modified plan calling for the artificial crevassing of both upper and lower fuse plugs and the middle section of the front-line levee.  The easements in effect prior to 1983 were not broad enough to cover the 1983 plan.

25.     From and since that time, the Corps has adopted additional modifications to the plan to breach the Birds Point levee in the event of floods exceeding 60 feet at the Cairo gauge. In spite of the modification of the Corps' plan in 1983 and in spite of the additional and further modifications of the Corps' plan subsequent thereto, the Corps never obtained the necessary flowage easements to allow execution of the 1983 version nor any subsequent versions of the Corps' plan.

26.    Stated another way, the Corps did not have the easements over the affected property in the Floodway necessary to allow it to breach the levee at Birds Point.

27.    In spite of the Corps lack of the easements in the Birds Point Floodway, the Corps breached the levee on May 2, 2011. Upon breaching the levee at the Birds Point Floodway, large tracts of Mississippi and New Madrid Counties were inundated with water flowing at a rate of 550 feet per second and a wall of water 15 feet high crashed through homes, farms and businesses, utterly devastating structures, land and possessions.

28.    To the extent any easements existed, they were insufficient to allow the flowage of water and debris over the plaintiffs' land and property in the force and magnitudes that existed during the flood created on May 2, 2011. The scope and use of the easements, to the extent any such easements existed, were exceeded to the plaintiffs' damage. Indeed, many affected properties never had any associated flowage easement whatsoever.

29.    To the extent such easements existed, they were acquired for value far below the value of the property taken by defendants, so as to be inequitable and so that the easement has subsumed the servient tenement.

30.    All of the Corps' plans to intentionally breach the Birds Point Levee are a part of the Corps' permanent policy and were adopted as a key component of the Flood Control Act of 1965.

6

31.     As a consequence of the Corps' policy and actions with respect to the Birds Point Levee, Plaintiffs' property will be subjected to inevitably recurring flooding.

32.     The actions of the Corps in breaching the Birds Point Levee (in an effort to conform with the permanent flood plan established under the Flood Control Act of 1965) constitute a taking of property under the 5th Amendment of the United States Constitution.

33.     In the aftermath of the breach, deep sand and sediment deposits were left on the farmland. The river was allowed to scour large sections of land away leaving deep blue holes and crevasses on formerly arable cropland. Such gouging, scouring, crevassing and silting of the farmland so affected is permanent in nature. Even the easements the government obtained in the 1960's – which did not cover the May 2, 2011 breach in any event – expressly reserved a right of compensation for landowners as a result of deposits of sand and gravel.

34.     At the time the levee was breached, corn prices were approximately $6.75 a bushel and the affected farm ground was producing approximately 200 bushels an acre.

35.     At the time the levee was breached, wheat was selling for between $8.00 and $9.00 a bushel and the affected farm ground was producing approximately 75 bushels an acre.

36.     At the time the levee was breached, soybeans were selling for between $12.00 and $14.00 a bushel and the affected farm ground was producing approximately 70 to 75 bushels an acre.

37.     At the time the levee was breached, acreage in the affected area was selling for between $4,000.00 and $6,000.00 an acre.

38.     Infrastructure was destroyed as a result of the breach including roads, bridges and drainage systems.

39.     Approximately 90 residences were wiped out and destroyed by the intentional breach of the levee and subsequent flooding.

40.     Farm operations and equipment were destroyed by the intentional breach of the levee and subsequent flooding.

41.     The intentional breach of the levee and subsequent flooding, destroying property, devaluing or destroying farm ground, residences, and businesses was a taking by the United States Government and Corps of Engineers under the 5th Amendment of the United States Constitution.

42.     The taking by the government of the Plaintiffs' property inured to the benefit of the government and pre-empted the Plaintiffs' right to enjoy their property.

43.     The damage to Plaintiffs' property was the natural, direct and probable consequence of the intentional breach of the levee and would not have occurred at all or in such magnitude but for the breach.

44.     By Defendant Corps of Engineers' own economic estimates, damage to the Plaintiffs' property and the affected property at Birds Point exceeds $300,000,000.00. Plaintiffs are not yet in a position to accept or reject that estimate.

## CLASS ACTION ALLEGATIONS

45.     Plaintiffs bring these claims against the Defendants pursuant to Rule 23 of the Rules of the Court of Federal Claims, individually and on behalf of a Class consisting of: all persons and entities who owned property in the affected Birds Point New Madrid County Floodway at the time the levee was breached by Defendant United States Corps of Engineers.

46.     The Class is so numerous a joinder of the individual members of the proposed Class is impracticable. The Class, upon information and belief, includes hundreds if not thousands of members. Plaintiffs do not anticipate any difficulties in the management of this action as a class action. The exact number and identity of Class members is not known.

47.     Common questions of fact and law exist here satisfying the requirement of Rule 23 including but not limited to:

(a)     Whether the Defendants violated the Takings Clause of the Fifth Amendment in breaching the Birds Point levee on May 2, 2011;

(b)     Whether the alleged constitutional violation caused injury to the businesses and property of Plaintiffs and other class members; and

(c)     The proper measure of common damages for which defendants may be liable.

48.     Plaintiffs' claims are typical of the other Class members' claims and do not conflict with the interest of any other Class members, as Plaintiffs and all Class

9

members were damaged by the Defendants' conduct in the taking, and the relief Plaintiffs seek is common to the relief sought on behalf of the Class.

49.     Plaintiffs will fairly and adequately protect the interests of the other Class members and have no interests that are antagonistic to or that conflict with those of other Class members. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in litigation of this nature to represent them and the members of the Class. Rule 23 is thus satisfied.

50.     Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individuals, the resulting multiplicity of lawsuits would cause undue hardship and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated individuals, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for the United States. The proposed Class thus satisfies the requirements of Rule 23 of the Court of Federal Claims.

51.     As discussed above, common questions of fact and law exist as to the liability of Defendants and damages suffered by Plaintiffs. These questions predominate over the individual questions presented in this action. The predominance requirement of Rule 23 is thus satisfied.

52.     A class action is the superior method for the fair and efficient adjudication of this controversy, because joinder of all Class members is impracticable. Because the

damages suffered by individual Class members may be relatively small, the expense and burden of litigation would prevent Class members from individually redressing the wrongs done to them. Where, as here, the size and nature of individual Class members' claims would allow few, if any, Class members to seek legal redress against the United States for the wrongs complained of herein, a representative class action is both the appropriate vehicle by which to adjudicate these claims and is essential to the interests of justice. Furthermore, a class action regarding the issues in this count creates no significant problems of manageability. The superiority and manageability requirements of Rule 23 are thus satisfied.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, hereby pray that the Court enter judgment against the Defendants, and each of them, in an amount the Court deems fair and reasonable for the damages suffered by Plaintiffs and for the Court to issue an appropriate Order certifying the Class pursuant to the Court's Rule 23, designating the named Plaintiffs as the representatives for such Class, for the Plaintiffs' costs herein expended, for attorney's fees and expenses, together with any other remedy the Court deems just in the premises.

Respectfully submitted,

COOK, BARKETT, PONDER & WOLZ, L.C.

By: _____

    J. Michael Ponder  -  MO 38066
    715 N. Clark, P.O. Box 1180
    Cape Girardeau, MO 63702-1180
    Phone: 573-335-6651  Fax:  573-335-6182
    E-mail: mponder@cbpw-law.com

COOK, BARKETT, PONDER & WOLZ, L.C.

By: _____

    Phillip J. Barkett, Jr. – MO 22958
    715 N. Clark, P.O. Box 1180
    Cape Girardeau, MO 63702-1180
    Phone: 573-335-6651  Fax:  573-335-6182
    E-mail:  pbarkett@cbpw-law.com

COOK, BARKETT, PONDER & WOLZ, L.C.

By: _____

    Kathleen A. Wolz  -  MO 35495
    715 N. Clark, P.O. Box 1180
    Cape Girardeau, MO 63702-1180
    Phone: 573-335-6651  Fax:  573-335-6182
    E-mail:  kwolz@cbpw-law.com

COHEN, MILSTEIN, SELLERS & TOLL, PLLC

By: _____

    Benjamin D. Brown  -  <u>DC 495836</u>
    1100 New York Avenue, NW
    Suite 500 W
    Washington, D.C. 20005
    Phone: 202-408-4600  Fax: 202-408-4699
    E-mail: bbrown@cohenmilstein.com
    ATTORNEYS FOR PLAINTIFFS

Dated: May 3, 2011