# EXHIBIT 1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

BIG OAK FARMS, INC.; MT. LEVEL FARMS CO, INC.;    )
PRESTON ADAMS, BRENT ADAMS AND    )
VALARIE ADAMS SMITH; LARRY AND CATHY ALLRED;    )
JOHN AND JOYCE ANDERSON; BAYOU DU CHEIN, LLC;    )
ROLAND AND CAROLYN ASHBY; SAM G. AUSTIN;    )
CHARLES AND LESLIE BABB; FIVE STAR FARMS, INC.;    )
DANIEL J. BABB FARMS; JACKIE L. AND PAULA F.    )
BARKER TRUST; SILVEY A. BARKER; ABNER M. BECK    )
LIVING TRUST AND JULIA R. BECK LIVING TRUST;    )
JOE AND DORA BROWN; FRED AND CHERYL BRYANT;    )
FRED BRYANT, INC.; SUSAN H. BRYANT;    )
J BRYANT INC.; MICHAEL BRYANT;    )
BRYANT FARMS, INC.; MILDRED BURNETT; CAROL A.    )
AND RONNIE L. BUTLER; JEFFREY D. BYRNE;    )
NITA S. BYRNE; RICHARD CRAWFORD; RODNEY    )
CRAWFORD; JAMES M. CULLISON FAMILY TRUST;    )
WILLIAM AND PAM DELINE; DELINE FARMS    )
PARTNERSHIP; BRIAN DILL FARMS; WILLIAM D. AND    )
GINGER DILL; MARK AND REBECCA DUGAN;    )
WILLIAM C. AND LAVERNE DUNN; JACK FEEZOR;    )
WILLIAM FEEZOR FOR B & F FARMS, INC.; ALICE B. FOX  )
FAMILY TRUST; LESLIE S. FOX LIVING TRUST;    )
LESLIE FOX FARMS, L.P.; JAY AND LUCILLE FRAZIER;    )
LEONARD GALLION; ALBERT GOODIN; R. E. LEE    )
GOODIN; GOODIN FARMS; JOHN AND CLYDA GOODIN;    )
J.W. LINDSAY AND MONICA GOODIN; GOODIN    )
LAND CO.; ROBERT AND SHARON HENRY; BRAD AND    )
SUSAN HEQUEMBOURG; TERRY AND JUDY    )
HEQUEMBOURG; HEQUEMBOURG FARMS, INC.;    )
THOMPSON HEIRS; AMOS FRANK AND ELIZABETH    )
HIGGERSON; GLENN M. HILLHOUSE FARMS, INC.;    )
HILLHOUSE FARMS, INC.; HILLHOUSE FAMILY, LLC;    )
COL. DAVID K. HOLLAND REVOCABLE LIVING TRUST;    )
CLAIRE M. HOLLAND; CLAIRE M. HOLLAND    )
REVOCABLE LIVING TRUST; NANCY N. HOLLAND    )
REVOCABLE LIVING TRUST; DAVID K. HOLLAND, JR.    )
AND JENNIFER KALFSBEEK, HOLLAND/KALFSBEEK    )
JOINT REVOCABLE LIVING TRUST; MARY HOUGH;    )
HUNTER PADBERG, LLC; MARTIN HUTCHESON;    )
JENNIFER T. BAKER TRUST; MICHAEL HUTCHESON;    )
JON AND TAMMI HUTCHESON; MKH FARMS, LLC;    )
JOE HUTCHISON; JENITA B. JONES; McIVAN JONES;    )
JONES FAMILY FARMS; McIVAN JONES FARMS, INC.;    )
MICHAEL KEMP; MICHAEL KEMP INC.; MARY BETH    )
LEE AND PHYLLIS ADUDELL; TERRY AND MARY BETH  )
LEE; ABBIE STORY LeFEVRE; ALAN LONG AND GARY    )

LONG; CAROLYN LUEBKE; MARSHALL AFFILIATES,  )
INC.; ARTHUR MATTINGLY FOR VIRGINIA DARE  )
FARMS, INC.; STANLEY D. MAY; LAURA B. MEEK  )
FOR JANET BONDURANT Q-TIP TRUST;  )
LOUIS MILLER FOR RINGO FARMS CORPORATION;  )
MIKE MONK AND JANET BOGLE MONK; JAMES C.  )
MORETON LIVING TRUST AND ELEANOR P. MORETON  )
LIVING TRUST; JOHN C. AND NANCY E. MORETON;  )
MORETON FARMS, INC.; MORETON PARTNERSHIP;  )
ROBERT AND DONNA MORGAN; MOXLEY FARMS, INC;  )
E. MOXLEY, INC.; P & J MOXLEY FARMS, LLC.; KEVIN S.  )
AND JONELL L. NALLY; D. LOWELL AND JOAN J.  )
NALLY; MARILYN NALLY; JOE OLIVER AND DAVID  )
OLIVER FOR BUR OAK FARMS; ROBERT AND GLORIA  )
OSBORN; SCOTT PETERS; JSP FARMS; ALBERT PETERS  )
PINHOOK HUNTING CLUB, LLC; PINHOOK HUNTING  )
CLUB PROPERTIES, LLC; JOHN L. AND SAMMIE L.  )
PONDER; CATHERINE PRESSON; RAY PRESSON;  )
ORVAL E. SHEW MARITAL TRUST; SHEW & PRESSON  )
FARMS, INC.; ROY PRESSON; DAISY R. REEVES AND  )
FLORENCE CANEPARI; O.A. REEVES TRUST; DAVID AND  )
MARILYN RENAUD; LINDSAY CAMP RINGO, SR.;  )
DONALD AND NORMA O. SAMS;  )
MARY KATHERINE SERVATIUS FAMILY TRUST;  )
ROY AND BARBARA SMITH; BART STALLINGS;  )
JBS FARMS, INC.; JEFF STALLINGS; BART & JEFF  )
STALLINGS FARMS; MARTIN STALLINGS; STALLINGS  )
BROTHERS; A.L. STORY, INC; ABC FARMS, INC.;  )
WOLF ISLAND FARMS, INC.; ERNEST STORY; STORY  )
FARMS, INC.; SHELBY STORY; STEPHEN AND  )
JANETTE STORY, INC.; STEPHEN AND KAREN STORY;  )
ERNEST TATE; NEAL TINNON; MILUS AND WANDA  )
WALLACE; MARY ELLEN WEAVER AND GENE R.  )
McCLAY; GENE R. McCLAY REVOCABLE  )
LIVING TRUST; WHITE OAKS RANCH, L.P.; C. DAVID  )
WILLIAMS; DONALD WILLIAMS FARMS, INC.;  )
DONALD WILLIAMS; DONALD WILLIAMS LIVING  )
TRUST; ELIZABETH WILLIAMSON TRUST;  )
JOHN R. WILSON AND JOHN STORY  )
FOR CONSOLIDATED DRAINAGE DIST. # 1,  )
  )  No: 11-275-L
    Plaintiffs,  )
  )  (Judge Nancy B. Firestone)
  vs.  )
  )
UNITED STATES OF AMERICA  )
  )
    Defendant.  )

**SECOND AMENDED COMPLAINT**

Plaintiffs, by and through their attorneys, bring this action against Defendant complaining and alleging as follows:

**NATURE OF THE CLAIM**

1.  Plaintiffs bring this action against Defendant for just compensation for the taking of property owned by them.  The taking commenced on May 2, 2011, when the United States Army Corps of Engineers elected to operate the Birds Point-New Madrid Floodway by destroying with explosives large portions of the frontline levee thereby inundating and destroying crops, property, businesses, buildings, and infrastructure with flood waters and accompanying sand and gravel.

2.  As a direct result of Defendant's operation of the Floodway, drainage ditches within the Floodway have been impaired by large deposits of sand, gravel, silt, and detritus. These deposits have interfered with and impeded customary drainage subjecting farmland to intermittent and recurring flooding.

3.  The destruction of, substantial damage to, and devaluation of farmland, equipment, residences, and other real estate structures resulting from Defendant's operation of the Floodway constituted a physical and permanent taking of Plaintiffs' property. Defendant preempted the rights of Plaintiffs to use and enjoy their property for the benefit of the public by diverting significant flood waters toward the Floodway and away from substantial properties outside the Floodway in and around Cairo, Illinois.

4.  Alternatively or in addition to Defendant's permanent taking of Plaintiffs' property, Defendant's permanent plan enabling them to breach the frontline levee at their discretion and Defendant's intentional breaches of the frontline levee and inundation of Plaintiffs' property with water, sand, and gravel constitute the taking of flowage easements

over these properties without just compensation.  The flooding of Plaintiffs' property is capable of and is inevitably recurring under the Defendant's plan for activation and operation of the Floodway.

5. Defendant failed to obtain and does not possess easements over and through the Plaintiffs' land necessary to intentionally flood and inundate the land as it did on May 2, 2011.  To the extent that a subset of parcels within the Floodway are subject to flowage easements, Defendant's actions failed to conform to the specifications and exceeded the scope of its rights under those easements.

6. The destruction of, damage to, and devaluation of Plaintiffs' property was the natural, direct, and probable consequence of Defendant's operation of the Floodway in the mode and method Defendant used, and would not have occurred at all, or in such magnitude, but for Defendant's actions.

## JURISDICTION

7. This Complaint states causes of action for taking of property and flowage easements without just compensation in violation of the Fifth Amendment to the United States Constitution. Alternatively, or in addition to these causes of action, Plaintiffs seek specific performance from Defendant of the easement agreements providing for compensation for sand and gravel deposits remaining on their property. The Court has jurisdiction over this action under 28 USC § 1491.

## THE PARTIES

8. Plaintiff Big Oak Farms, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

9. Plaintiff Mt. Level Farms Co., Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

10. Plaintiffs Preston Adams, Brent Adams and Valarie Adams Smith are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

11. Plaintiffs Larry and Cathy Allred are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

12. Plaintiffs John and Joyce Anderson are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

13. Plaintiff Bayou Du Chein, LLC is a farming partnership duly authorized and existing under the laws of the State of Missouri.

14. Plaintiffs Roland and Carolyn Ashby are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

15. Plaintiff Sam G. Austin is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

16. Plaintiffs Charles and Leslie Babb are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

17. Plaintiff Five Star Farms, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

18. Plaintiff Daniel J. Babb Farms is a farming partnership duly authorized and existing under the laws of the State of Missouri.

19. Plaintiff Jackie L. and Paula F. Barker Trust is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

20. Plaintiff Silvey A. Barker is the record owner of farm property located within the Birds-Point-New Madrid Floodway in Mississippi County, Missouri.

21. Plaintiffs Abner M. Beck Living Trust and Julia R. Beck Living Trust are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

22. Plaintiffs Joe and Dora Brown are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

23. Plaintiffs Fred and Cheryl Bryant are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

24. Plaintiff Fred Bryant, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

25. Plaintiff Susan H. Bryant is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

26. Plaintiff J. Bryant, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

27. Plaintiff Michael Bryant is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

28. Plaintiff Bryant Farms, Inc.is a farming corporation duly authorized and existing under the laws of the State of Missouri.

29. Plaintiff Mildred Burnett is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

30. Plaintiffs Carol A. and Ronnie L. Butler are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

31. Plaintiff Jeffrey D. Byrne is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

32. Plaintiff Nita S. Byrne is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

33. Plaintiff Richard Crawford is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

34. Plaintiff Rodney Crawford is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

35. Plaintiff James M. Cullison Family Trust is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

36. Plaintiffs William and Pam Deline are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

37. Plaintiff Deline Farms Partnership is a farming partnership duly authorized and existing under the laws of the State of Missouri.

38. Plaintiff Brian Dill Farms is a farming partnership duly authorized and existing under the laws of the State of Missouri.

39. Plaintiffs William D. and Ginger Dill are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

40. Plaintiffs Mark Dugan and Rebecca Dugan are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

41. Plaintiffs William C. and Laverne Dunn are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

42. Plaintiff Jack Feezor is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

43. Plaintiff B & F Farms, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

44. Plaintiff Alice B. Fox Family Trust is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

45. Plaintiff Leslie S. Fox Living Trust is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

46. Plaintiff Leslie Fox Farms, L.P. is a farming partnership duly authorized and existing under the laws of the State of Missouri.

47. Plaintiffs Jay and Lucille Frazier are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

48. Plaintiff Leonard Gallion is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

49. Plaintiff Albert Goodin is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

50. Plaintiff R. E. Lee Goodin is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

51. Plaintiff Goodin Farms is a farming partnership duly authorized and existing under the laws of the State of Missouri.

52. Plaintiffs John and Clyda Goodin are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

53. Plaintiffs J.W. Lindsay and Monica Goodin are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

54. Plaintiff Goodin Land Co. is a farming partnership duly authorized and existing under the laws of the State of Missouri.

55. Plaintiffs Robert and Sharon Henry are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

56. Plaintiffs Brad Hequembourg and Susan Hequembourg are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

57. Plaintiffs Terry Hequembourg and Judy Hequembourg are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

58. Plaintiff Hequembourg Farms, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

59. Plaintiff Thompson Heirs is a farming partnership duly authorized and existing under the laws of the State of Missouri.

60. Plaintiffs Amos Frank and Elizabeth Higgerson are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

61. Plaintiff Glenn M. Hillhouse Farms, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

62. Plaintiff Hillhouse Farms, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

63. Plaintiff Hillhouse Family, LLC is a farming partnership duly authorized and existing under the laws of the State of Missouri.

64. Plaintiff Col. David K. Holland Revocable Living Trust is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

65. Plaintiff Claire M. Holland is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

66. Plaintiff Claire M. Holland Revocable Living Trust is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

67. Plaintiff Nancy N. Holland Revocable Living Trust is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

68. Plaintiff Holland/Kalfsbeek Joint Revocable Living Trust is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

69. Plaintiff Mary Hough is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

70. Plaintiff Hunter Padberg, LLC is a farming partnership duly authorized and existing under the laws of the State of Missouri.

71. Plaintiff Martin Hutcheson is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

72. Plaintiff Michael Hutcheson is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

73. Plaintiff Jennifer T. Baker Trust is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

74. Plaintiffs Jon and Tammi Hutcheson are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

75. Plaintiff MKH Farms, LLC is a farming partnership duly authorized and existing under the laws of the State of Missouri.

76. Plaintiff Joe Hutchison is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

77. Plaintiff Jenita B. Jones is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

78. Plaintiff McIvan Jones is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

79. Plaintiff Jones Family Farms is a farming partnership duly authorized and existing under the laws of the State of Missouri.

80. Plaintiff McIvan Jones Farms, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

81. Plaintiff Michael Kemp is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

82. Plaintiff Michael Kemp Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

83. Plaintiffs Mary Beth Lee and Phyllis Aduddell are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

84. Plaintiffs Terry and Mary Beth Lee are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

85. Plaintiff Abbie Story LeFevre is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

86. Plaintiffs Alan Long and Gary Long are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

87. Plaintiff Carolyn Luebke is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

88. Plaintiff Marshall Affiliates, Inc., is a farming corporation duly authorized and existing under the laws of the State of Missouri.

89. Plaintiff Virginia Dare Farms, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

90. Plaintiff Stanley D. May is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

91. Plaintiff Janet Bondurant Q-tip Trust is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

92. Plaintiff Ringo Farms Corporation is a farming corporation duly authorized and existing under the laws of the State of Missouri.

93. Plaintiffs Michael and Janet Bogle Monk are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

94. Plaintiffs James C. Moreton Living Trust and Eleanor P. Moreton Living Trust are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

95. Plaintiffs John C. and Nancy E. Moreton are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

96. Plaintiff Moreton Farms, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

97. Plaintiff Moreton Partnership is a farming partnership duly authorized and existing under the laws of the State of Missouri.

98. Plaintiffs Robert and Donna Morgan are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

99. Plaintiff Moxley Farms, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

100.     Plaintiff E. Moxley, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

101.     Plaintiff P & J Moxley Farms, LLC is a farming partnership duly authorized and existing under the laws of the State of Missouri.

102.   Plaintiffs Kevin S. and Jonell L. Nally are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

103.  Plaintiffs D. Lowell and Joan J. Nally are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

104.  Plaintiff Marilyn Nally is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

105.  Plaintiff Bur Oak Farms is a farming partnership duly authorized and existing under the laws of the State of Missouri.

106.  Plaintiffs Robert and Gloria Osborn are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

107.  Plaintiff Scott Peters is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

108.  Plaintiff JSP Farms is a farming partnership duly authorized and existing under the laws of the State of Missouri.

109.  Plaintiff Albert Peters is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

110.  Plaintiff Pinhook Hunting Club, LLC is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

111.  Plaintiff Pinhook Hunting Club Properties, LLC is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

112.  Plaintiffs John L. and Sammie L. Ponder are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

113.  Plaintiff Catherine Presson is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

114.  Plaintiff Ray Presson is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

115. Plaintiff The Orval E. Shew Marital Trust is the record owner of farm property in Mississippi County, Missouri.

116. Plaintiff Shew & Presson Farms, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

117. Plaintiff Roy Presson is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

118. Plaintiffs Daisy R. Reeves and Florence Canepari are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

119. Plaintiff O.A. Reeves Trust is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

120. Plaintiffs David and Marilyn Renaud are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

121. Plaintiff Lindsay Camp Ringo, Sr. is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

122. Plaintiffs Donald and Norma O. Sams are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

123. Plaintiff Mary Katherine Servatius Family Trust is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

124. Plaintiffs Roy and Barbara Smith are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

125. Plaintiff Bart Stallings is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

126. Plaintiff Jeff Stallings is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

127. Plaintiff JBS Farms, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

128. Plaintiff Bart & Jeff Stallings Farms is a farming partnership duly authorized and existing under the laws of the State of Missouri.

129. Plaintiff Martin Stallings is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

130. Plaintiff Stallings Brothers is a farming partnership duly authorized and existing under the laws of the State of Missouri.

131. Plaintiff A.L. Story, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

132. Plaintiff ABC Farms, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

133. Plaintiff Wolf Island Farms, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

134. Plaintiff Ernest Story is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

135. Plaintiff Story Farms, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

136. Plaintiff Shelby Story is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

137. Plaintiff Stephen and Janette Story Farms, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

138. Plaintiffs Stephen and Karen Story are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

139. Plaintiff Ernest Tate is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

140. Plaintiff Neal Tinnon is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

141. Plaintiffs Milus and Wanda Wallace are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

142. Plaintiffs Mary Ellen Weaver and Gene R. McClay are the record owners of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

143. Plaintiff Gene R. McClay Revocable Living Trust is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

144. White Oaks Ranch, L.P., is a farming partnership duly authorized and existing under the laws of the State of Missouri.

145. Plaintiff C. David Williams is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

146. Plaintiff Donald Williams Farms, Inc. is a farming corporation duly authorized and existing under the laws of the State of Missouri.

147. Plaintiff Donald Williams is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

148. Plaintiff Donald Williams Living Trust is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

149. Plaintiff Elizabeth Williamson Trust is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

150. Plaintiff John R. Wilson is the record owner of farm property located within the Birds Point-New Madrid Floodway in Mississippi County, Missouri.

151. Consolidated Drainage District No. 1 of Mississippi County, Missouri is a municipal entity owning and controlling land and infrastructure located within the Birds-Point-New Madrid Floodway in Mississippi County, Missouri.

152. Defendant is the United States of America, a sovereign entity with the power of eminent domain. Through its agency, the United States Army Corps of Engineers, Defendant is responsible for the operation of the Birds Point-New Madrid Floodway as a flood control project.

## FACTUAL ALLEGATIONS

153. All Plaintiffs own real property within the Birds Point-New Madrid Floodway (hereinafter "Birds Point" or "Floodway") located in Mississippi County, Missouri, and did so on May 2, 2011. Property owned by Plaintiffs was destroyed, severely damaged, and devalued when Defendants elected to operate the Floodway and inundate Plaintiffs' land with flood water and deposits of sand and gravel.

154. Defendant, through its agency, the United States Army Corps of Engineers (hereinafter "Corps"), is responsible for flood control throughout the United States, including, without limitation, the Mississippi River Valley and the Birds Point-New Madrid Floodway.

155. Birds Point is a component of the Mississippi River and Tributaries Project ("MR&T") located on the west bank of the Mississippi River in Mississippi and New Madrid Counties, Missouri. MR&T was authorized by the 1928 Flood Control Act.

156. The Floodway comprises approximately 130,000 acres of land, largely and prosperously cultivated as farmland. It is bound by a 56 mile long "frontline" levee on the east (river side) and a 36 mile long "setback" levee on the west. The Floodway is designed, upon activation by crevassing of the frontline levee, to divert flood waters from the Mississippi River, providing

an estimated seven feet of stage lowering in the vicinity of Cairo, Illinois, and smaller reductions above Cairo.

157. In June 1927, President Calvin Coolidge ordered the Mississippi River Commission ("Commission") and the Corps to develop comprehensive plans for protecting the alluvial valley from floods of the Mississippi River. The Commission's plan largely recommended stronger and higher levees, including a 70.4 foot levee on the Cairo gage to protect Cairo, Illinois, then a prosperous river city.

158. Deeming the Commission's plan too expensive, the Corps rejected it in favor of its own plan, which included the Floodway. The Floodway was created by building the setback levee between three and ten miles west of the existing frontline levee and degrading and *lowering* eleven miles of the frontline levee by 3.5 feet to correspond with a stage of 55 feet on the Cairo gage. This degraded section of the frontline levee represented the "fuseplug." Under flood conditions, the water would overtop and crevasse the degraded portion, thereby activating the Floodway.

159. In other words, under the Corps' plan, dubbed the "Jadwin Plan" for then Chief of Engineers, Major General Edgar Jadwin, private land that was once protected by levees would now be subject to inundation to reduce flood stages elsewhere.

160. Despite considerable opposition to the creation of the Floodway, the 1928 Flood Control Act adopted the Jadwin Plan. Section 4 of the legislation required the federal government to compensate landowners who would be subjected "to additional destructive floodwaters that will pass by reason of diversion" from the Mississippi River.

161. Construction of the setback levee was scheduled to begin in the summer of 1929, but was briefly delayed when a landowner in the Floodway sought an injunction to halt the construction. The United States District Court for the District of Missouri denied the

injunction, but made clear that if damages were realized as a result of the operation of the Floodway, the landowner had "complete and adequate remedy" for compensation under the requirements in the 1928 Act.

162. Construction of the setback levee occurred between October 1929 and October 1932. However, the fuseplug section of the frontline levee was not degraded until nearly ten years later after the federal government had acquired flowage easements over approximately 80% of the Floodway at an average price of $17 per acre.

163. On January 23, 1937, Brig. General Harley Ferguson approved the first operation of the Floodway.  The Missouri Governor summoned the National Guard to remove inhabitants of the Floodway who attempted to prevent its operation, and Corps employees breached the asyet-undegraded upper fuseplug area with dynamite, sending floodwaters coursing through the Floodway. Following this operation of the Floodway, the Corps' Chief testified in Congress that " I am now of the opinion that no plan is satisfactory which is based upon deliberately turning floodwaters upon the homes and property of people, even though the right to do so may have been paid for in advance."

164. Pursuant to the 1965 Flood Control Act, the Corps modified the existing plan for operating the Floodway. The new plan mandated that the Floodway could be operated by artificial crevassing through explosives detonation only at the upper fuseplug section of the frontline levee.

165. To conform to the new plan, the federal government acquired modified flowage easements over a portion of the Floodway between 1968 and 1974.  These modified flowage easements specified that the United States was condemning an "easement to flood and inundate the lands" "by diversion of flood waters of the Mississippi River and its tributaries in the operation of the Birds Point-New Madrid Floodway, *said floodway to be placed in operation by artificial*

19

*breaching or crevassing of any part or parts of the fuse plug sections of the frontline levee,*

*between Levee Stations 33/20+46 and 44/20+46 and 82/0+35 and 87/0+00 . . ."*

166. The easements also reserved to the landowners all rights and privileges to use and enjoy the land so long as the rights provided by the easements were not interfered with or abridged and "to compensation as may become due by reason of excessive deposits of sand and gravel upon the lands . . . as a direct result of the planned operation of the floodway[.]"

167. Following floods in 1973, 1975, and 1979, the Corps again revised the Floodway's operation plan. This new plan allowed for artificial crevassing by explosion in additional locations, two points along the upper fuseplug, one point along the lower fuseplug, and one point along the midsection of the frontline levee across from Hickman, Kentucky. The Corps' flowage easements were not broad enough to cover this modified plan. Moreover, the Corps had insufficient property rights to allow them to access the levee to install explosives to operate the Floodway according to this newly-modified plan.

168. In November 1981, the St. John Levee and Drainage District and Levee District No. 3 of Mississippi County, Missouri refused to grant rights of entry to the Corps to access the levee in order to crevasse it with explosives in the event that river conditions warranted operation of the Floodway.

169. In 1983, the United States instituted eminent domain proceedings against the Levee Districts to obtain the necessary access to operate the Floodway pursuant to its modified plan. In response, several landowners and Levee District No. 3 sought an injunction to prevent the operation of the Floodway. The district court granted the injunction against operation of the Floodway pursuant to the modified plan. In so ruling, the court found that no substantial evidence suggested that the four additional crevasses provided for by the new plan were necessary to ensure proper operation of the Floodway. The Eighth Circuit reversed the district court,

finding that the operation of the Floodway was a discretionary function on the part of the

Corps, but stated, "We question whether the government has obtained all necessary easements.

The modified flowage easements executed by the landowners convey to the government only

the right to flood lands by artificial crevassing of the fuseplug sections of the frontline levee.

However, the 1983 plan also calls for the artificial crevassing of the section of the frontline

levee between the two fuseplug sections." *Story v. Marsh*, 732 F.2d 1375, 1384 (8th Cir.

1984). The Court went on to note that the landowners' remedy at law upon the government's

operation of the Floodway without the appropriate easements sounded under the Tucker Act.

*Id.*

170. Despite clear and significant changes to the Floodway's operating plan that failed to conform

to the requirements of the flowage easements obtained by the federal government in the 1930s

and between 1968 and 1974, and the warnings of the Eighth Circuit that the failure to conform

its property rights to the current operation plan could result in takings claims, the United States

and the Corps never sought or obtained the necessary flowage easements to allow execution of

its 1983 or any subsequent versions of the Floodway operation plan.

171. Stated another way, the parcels of land located in the Floodway are subject to (1) no

easements; (2) easements conforming to the original operation plan; or (3) easements

conforming to the 1965 operation plan. The Corps did not and does not have sufficient

property rights over any property in the Floodway to allow it to breach the levee at Birds Point

pursuant to the current operation plan.

172. The Corps' original operation plan for the Floodway and all subsequent modifications thereto,

including the current operation plan, are a part of the Corps' permanent policy and were

adopted as key components of the Flood Control Acts of 1928 and 1965. As a consequence of

this policy, the Floodway may be operated at the Corps' discretion, and the land within the Floodway is subjected to inevitably recurring flooding.

173. On May 2, 2011, the Corps artificially breached the frontline levee in multiple locations in accordance with the current operation plan.  As a direct result of these breaches, the land within the Floodway was inundated with flood water.  A wall of water 15 feet high crashed through homes, farms, and businesses, utterly devastating structures, land, and possessions.

174. In the aftermath of the breaches, deep sand and gravel deposits were left on the farmland. Drainage ditches that routinely and customarily serve to catch and divert excess water away from farmland were overwhelmed with deposits of sand, gravel, silt, and detritus, substantially impairing or destroying their efficacy.  For example, Drainage Ditch No. 29, a formerly fifteen-feet-deep ditch, has been rendered one-foot-deep by large deposits.  This inundation of the drainage ditches with sand and gravel has subjected the Floodway to intermittent and recurring flooding from low-level rain, storm, and other events that would not cause flooding in the normal course absent Defendant's actions and the resulting deposits.

175. A representative from the Army Corps of Engineers met with owners of the affected properties after the May 2, 2011 flood.  At that meeting, the representative told the owners seeking money to remove the sand and gravel deposits from their land that their only recourse was to submit claims through the Federal Tort Claims Act process.  The representative told the owners that their claims would accepted, as an administrative matter, but that there was no guarantee that they would be paid.

176. The river scoured large sections of land, leaving deep blue holes and crevasses on formerly arable cropland.  Top soil has been largely washed away and/or degraded. Such gouging, scouring, crevassing and silting of the farmland is permanent in nature.  This damage to the

land disrupts planting cycles and negatively impacts the land's arability, thereby substantially diminishing its value.

177. At the time the levee was breached, acreage in the affected area was selling for between $4,000.00 and $6,000.00 an acre.

178. As a direct result of the operation of the Floodway pursuant to the current operating plan, crops were destroyed.

179. At the time the levee was breached, corn prices were approximately $6.75 a bushel, and the affected farm ground was producing approximately 200 bushels an acre.

180. At the time the levee was breached, wheat was selling for between $8.00 and $9.00 a bushel, and the affected farm ground was producing approximately 75 bushels an acre.

181. At the time the levee was breached, soybeans were selling for between $12.00 and $14.00 a bushel, and the affected farm ground was producing approximately 70 to 75 bushels an acre.

182. As a direct result of the Corps' operation of the Floodway on May 2, 2011, infrastructure was destroyed, including without limitation roads, bridges, and drainage systems.

183. Approximately 90 residences were destroyed by the intentional breaches of the levee and subsequent flooding.

184. Farm operations and equipment were destroyed by the intentional breaches of the levee and subsequent flooding.

185. The damage to Plaintiffs' property was the natural, direct, and probable consequence of the intentional breaches of the levee and would not have occurred at all or in such magnitude but for the breaches.

186. The extent of the destruction of, damage to, and devaluation of Plaintiffs' property is significantly greater as a direct result of Defendant's operation of the Floodway under the

23

current operating plan, as opposed to its operation under earlier operation plans that imposed greater limitations on where the frontline levee could be breached.

187. The destruction of, substantial damage to, and the devaluing of farmland, residences, businesses, and other structures and property was intended to inure to the benefit of the public and Defendant by alleviating flood stages, risk, and damage elsewhere, and preempted the Plaintiffs' right to use and enjoy their property.

188. The Corps' permanent policy and plan for operation of the Floodway and its actions in accordance therewith constitute the taking of a flowage easement by the United States over and through Plaintiffs' property without just compensation.

189. These actions are properly brought and litigated together and relate back to the initial complaint in this matter because certain questions of law or fact are common to all plaintiffs and have been put at issue since the initial complaint in this matter, including but not limited to:

> (i) Whether the flooding of Plaintiffs' crops, property, and businesses was the natural and probable consequence of the Corps' operation of the Floodway;
>
> (ii) Whether the flooding of Plaintiffs' crops, property, and businesses resulted in the destruction of, substantial damage to, and devaluation of such crops, property, and/or businesses;
>
> (iii) Whether the destruction of, substantial damage to, and devaluation of Plaintiffs' crops, property, and businesses would have occurred at all, or in such magnitude, but for the Corps' operation of the Floodway under the current operating plan;
>
> (iv) Whether Defendant's actions in operating the Floodway on May 2, 2011, constituted a permanent taking of Plaintiffs' property by preempting their use and

enjoyment of the land for the benefit of Defendant and the public under the Fifth Amendment;

(v) Whether Defendant's maintenance and use of its current operation plan for the Floodway constituted the appropriation of flowage easements over and through Plaintiffs' property without just compensation; and

(vi) The proper measure of common damages for which Defendant is liable.


## CAUSES OF ACTION

## COUNT I:  PREEMPTION OF USE AND ENJOYMENT OF PROPERTY WITHOUT JUST COMPENSATION

190. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 191, and further allege as follows:

191. Plaintiffs' interests in their crops, soil, land, structures, and/or businesses are recognized as property rights under the laws of the state of Missouri.  The destruction and devaluation of this property constitutes a compensable taking under the Fifth Amendment to the United States Constitution.

192. At approximately 10 p.m. on May 2, 2011, the Corps intentionally breached the frontline levee in multiple locations with a series of orchestrated explosions and inundated the Floodway, comprising approximately 130,000 acres of Mississippi and New Madrid Counties, Missouri, with flood waters from the Mississippi River.

193. As a direct and proximate result of the acts of Defendant, Plaintiffs' property has been destroyed, substantially damaged, and devalued.

194. Defendant failed to obtain and did not have flowage easements over and through the affected property necessary to allow it to operate the Floodway and destroy, damage, and devalue the property owned by Plaintiffs.

195. To the extent that Defendant had flowage easements over and through some subset of the affected parcels of land, they were insufficient to allow the flowage of water and debris over and through Plaintiffs' property with the force, magnitude, and direction that such water and debris flowed after the operation of the Floodway on May 2, 2011. Defendant substantially exceeded the scope and use of such easements to the detriment of Plaintiffs.

196. Additionally, to the extent that flowage easements existed, they were acquired for value far below the value of the property taken by Defendant so as to be inequitable.

197. The destruction, damage, and devaluation of Plaintiffs' property by Defendant was intended to inure to the benefit of the public and Defendant by reducing the flood stages, risk, and damage to other areas.  Defendant's actions preempted Plaintiffs' use and enjoyment of their property.

198. The destruction of, damage to, and devaluation of Plaintiffs' property was the natural, direct, and probable consequence of Defendant's operation of the Floodway and would not have occurred at all or in such magnitude but for Defendant's operation and manner of operation of the Floodway.

## COUNT II:  APPROPRIATION OF FLOWAGE EASEMENT WITHOUT JUST COMPENSATION

199. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 200, and further allege as follows:

200. In 1983 and subsequently, the Corps has adopted and maintained a policy and plan to operate the Floodway by artificial crevassing by explosion of at least four locations along the frontline levee when deemed necessary within the sole discretion of the Corps.

201. Operation of the Floodway results in the flooding and inundation of the land, property, and businesses located within the Floodway owned by Plaintiffs.

202. This policy and plan subjects the property owned by Plaintiffs to inevitably recurring flooding.

203. Defendant's breaching of the levee on May 2, 2011, done in accordance with the Corps' permanent plan and policy resulted in the inundation of the Floodway's drainage ditch system with sand, gravel, silt, and detritus, impairing its efficacy or rendering it inoperable.  The impairment of the Floodway's drainage ditches subjects the Floodway to intermittent and inevitably recurring flooding.

204. Under previous iterations of the operation plan, Defendant recognized that its maintenance and use of the Floodway required it to obtain flowage easements over and through Plaintiffs' property.

205. However, Defendant has failed to obtain and does not possess flowage easements over Plaintiffs' property that conform to the current operation plan or allow Defendant to operate the Floodway in accordance with the current plan.

206. Defendant's maintenance and use of its current operation plan for the Floodway constitutes the appropriation of flowage easements over and through Plaintiffs' property for which Defendant has not provided just compensation.

207. To the extent any flowage easements exist, they are non-conforming and inapplicable.

208. To the extent any flowage easements exist, Defendant exceeded their scope by operating the Floodway pursuant to the current plan.

209. To the extent that any flowage easements exist, Defendant obtained them for value greatly below their fair value so as to be inequitable.

## COUNT III: BREACH OF EASEMENT AGREEMENT

210. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 211, and further allege as follows:

211. To the extent that the affected land is subject to easement agreements between Defendant and a Plaintiff, and to the extent that the Court finds the easements enforceable despite Defendant

having exceeded the scope of Defendant's grant under the easements, Plaintiffs, in the alternative, seek damages for Defendant's breach of its agreement to provide compensation for sand and gravel deposits left on the land following operation of the Floodway.

212. Following the Corps' modification of the Floodway operation plan pursuant to the Flood Control Act of 1965, Defendant drafted and entered into modified flowage easement agreements with Plaintiffs covering a portion of the Floodway. These easements reserved to the landowners all rights "to compensation as may become due by reason of excessive deposits of sand and gravel upon the lands … as a direct result of the planned operation of the floodway."

213. These easements were not subsequently modified to conform to the current operating plan or otherwise.

214. In the aftermath of Defendant's planned operation of the Floodway on May 2, 2011, deep sand and gravel deposits were left on the farmland and have inundated and filled drainage ditches. These sand and gravel deposits were the direct, natural, and probable consequence of Defendant's operation of the Floodway.

215. The sand and gravel deposits have destroyed, substantially damaged, and devalued Plaintiffs' property. The deposits have killed crops, disrupted planting cycles, and negatively impacted the lands' arability, thereby substantially diminishing its value. Deposits have also rendered drainage ditches inoperable, subjecting large swaths of land to intermittent and inevitably recurring flooding.

216. The Defendant's representative has communicated to Plaintiffs that, despite the terms of the easements, Defendant does not plan to compensate Plaintiffs for removal of the sand and gravel deposits, except to the extent Plaintiffs bring successful tort claims.

217.  These statements combined with the Defendant's failure to pay for the removal of the sand and

gravel deposits constitute a constructive breach of the terms of the easements.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated,

hereby pray for relief as follows:

1.  That Defendant's conduct alleged herein be adjudged and decreed to be a taking and

in violation of the Fifth Amendment to the United States Constitution;

2.  That the Court enter judgment against the Defendant in an amount yet unascertained,

the just amount to be proven at trial; and

3.  That the Court enter an Order granting the payment of Plaintiffs' costs herein

expended, for attorney's fees and expenses, together with any other remedy the Court deems just

in the premises.

Respectfully submitted,

COOK, BARKETT, PONDER & WOLZ, L.C.

By: */s/ J. Michael Ponder*
J. Michael Ponder -MO 38066
1610 N. Kingshighway, Suite 201
P.O. Box 1180
Cape Girardeau, MO 63702-1180
Phone: 573-335-6651   Fax: 573-335-6182
E-mail: mponder@cbpw-law.com

COOK, BARKETT, PONDER & WOLZ, L.C.

By: */s/ Phillip J. Barkett, Jr.*
Phillip J. Barkett, Jr.  – MO 22958
1610 N. Kingshighway, Suite 201
P.O. Box 1180
Cape Girardeau, MO 63702-1180
Phone: 573-335-6651
Fax: 573-335-6182
E-mail:  pbarkett@cbpw-law.com

29

COOK, BARKETT, PONDER & WOLZ, L.C.

By: */s/ Kathleen A. Wolz*
Kathleen A. Wolz -MO 35495
1610 N. Kingshighway, Suite 201
P.O. Box 1180
Cape Girardeau, MO 63702-1180
Phone: 573-335-6651
Fax: 573-335-6182
E-mail:  kwolz@cbpw-law.com

COHEN MILSTEIN SELLERS & TOLL PLLC

By: */s/ Benjamin D. Brown*
Benjamin D. Brown   -DC 495836
1100 New York Avenue NW, Suite 500
Washington, D.C. 20005
Phone: 202-408-4600 Fax: 202-408-4699
E-mail:  bbrown@cohenmilstein.com

COHEN MILSTEIN SELLERS & TOLL PLLC

By: */s/ Laura Alexander*
Laura Alexander   -DC 988950
1100 New York Avenue NW, Suite 500
Washington, D.C. 20005
Phone: 202-408-4600 Fax: 202-408-4699
E-mail:  lalexander@cohenmilstein.com

ATTORNEYS FOR PLAINTIFFS

Dated: March 16, 2018