## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BIG OAK FARMS, INC., *et al.*,     )
                                       )
           Plaintiffs,      )
                                       )    Case No. 11-275-L
          v.                 )
                                       )
UNITED STATES,             )    Hon. Nancy B. Firestone
                                       )
           Defendant.     )
_____ )

## PLAINTIFFS' OPPOSITION TO THE UNITED STATES' "MOTION TO DISMISS TIME-BARRED CLAIMS" (ECF NO. 125)

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

I.   INTRODUCTION ........................................................................................ 1

II.  PROCEDURAL AND FACTUAL BACKGROUND ..................................... 2

III. LEGAL STANDARDS ................................................................................. 6

IV.  ARGUMENT ................................................................................................ 8

      A.   THE THIRD AMENDED COMPLAINT RELATES BACK TO THE
           ORIGINAL COMPLAINT IN THIS LITIGATION AND THUS DOES
           NOT IMPLICATE TOLLING CONCERNS ......................................... 8

              1.   Because the Third Amended Complaint Comports With the Plain
                    Language of Rule 15(c) and the Government Had Notice of the
                    Intent to Identify These Additional Plaintiffs' Claims, the
                    Government's Motion Must Be Denied.................................... 8

              2.   The Government's Offer of a Cramped Interpretation of the
                      "Identity of Interest" Test Does Not Save Its Motion.............. 13

      B.   THE ORIGINAL COMPLAINT TOLLED CLAIMS OF ABSENT
           CLASS MEMBERS AND THUS THE NEWLY-NAMED PLAINTIFFS'
           CLAIMS ARE TIMELY ..................................................................... 20

V.   CONCLUSION ............................................................................................ 28

i

## TABLE OF AUTHORITIES

**CASES**

**Page(s)**

*Aarhus Oliefabrik, A/S v. A.O. Smith Corp.*,
22 F.R.D. 33 (E.D. Wis. 1958) ...................................................................................11

*Adair v. Hunt Int'l Res. Corp.*,
526 F. Supp. 736 (N.D. Ill. 1981) ..............................................................................16

*Allen v. Similasan Corp.*,
96 F. Supp. 3d 1063 (S.D. Cal. 2015).........................................................................12

*Baldwin Cty. Welcome Ctr. v. Brown*,
466 U.S. 147 (1984)......................................................................................................9

*Barron Bancshares, Inc. v. United States*,
366 F.3d 1360 (Fed. Cir. 2004).....................................................................................8

*Bright v. United States*,
603 F.3d 1273 (Fed. Cir. 2010)........................................................................... *passim*

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
137 S. Ct. 2042 (2017)..............................................................................25, 26, 27, 28

*Cliff v. Payco Gen. Am. Credits, Inc.*,
363 F.3d 1113 (11th Cir. 2004) ..................................................................................14

*Creppel v. United States*,
33 Fed. Cl. 590 (1995) ................................................................................................19

*Fauvergue v. United States*,
85 Fed. Cl. 50 (2008) .......................................................................................12, 13, 14

*Fisher v. Duff*,
No. C15-5944 BHS, 2016 WL 3280429 (W.D. Wash. June 15, 2016)....................20

*Geneva Rock Prods., Inc. v. United States*,
100 Fed. Cl. 778 (2011) ....................................................................................20, 22, 23

*Genesee Cty. Emps.' Ret. Sys. v. Thornburg Mortg. Sec. Trust 2006-3*,
825 F. Supp. 2d 1082 (D.N.M. 2011) .............................................................12, 17, 18

*In re Glacier Bay*,
746 F. Supp. 1379 (D. Alaska 1990) ...................................................................12, 17

*In re Hanford Nuclear Reservation Litig.*,
  534 F.3d 986 (9th Cir. 2008) ...................................................................18

*Hawkins v. Groot Indus., Inc.*,
  210 F.R.D. 226 (N.D. Ill. 2002)..................................................................9

*Holland v. United States*,
  62 Fed. Cl. 395 (2004) ..............................................................................16

*Immigrant Assistance Project of L.A. Cty. Fed'n of Labor (AFL-CIO) v.*
*Immigration & Naturalization Serv.*,
  306 F.3d 842 (9th Cir. 2002) .....................................................................17

*Intrepid v. Pollock*,
  907 F.2d 1125 (Fed. Cir. 1990)....................................................................9

*Lehman v. United Parcel Serv., Inc.*,
  443 F. Supp. 2d 1146 (W.D. Mo. 2006) ....................................................18

*Newberg v. Am. Dryer Corp.*,
  195 F. Supp. 345 (E.D. Pa. 1961) ..............................................................11

*Nielsen v. Prof'l Fin. Mgmt., Ltd.*,
  682 F. Supp. 429 (D. Minn. 1987)..............................................................15

*Olech v. Vill. of Willowbrook*,
  138 F. Supp. 2d 1036 (N.D. Ill. 2000) .......................................................14

*In re Osage Expl. Co.*,
  104 F.R.D. 45 (S.D.N.Y. 1984) ..................................................................16

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  277 F.R.D. 52 (D. Mass. 2011).....................................................................7

*Plubell v. Merck & Co.*,
  434 F.3d 1070 (8th Cir. 2006) ..........................................................11, 12, 14

*Schiavone v. Fortune*,
  477 U.S. 21 (1986).................................................................................10, 15

*Snoqualmie Tribe of Indians ex rel. Skykomish Tribe of Indians v. United States*,
  372 F.2d 951 (Ct. Cl. 1967) ................................................................. *passim*

*Staren v. Am. Nat'l Bank & Trust Co.*,
  529 F.2d 1257 (7th Cir. 1976) .............................................................10, 15

*State Farm Mut. Auto. Ins. Co. v. Boellstorff*,
     540 F.3d 1223 (10th Cir. 2008) ......................................................................18

*Stockton E. Water Dist. v. United States*,
     62 Fed. Cl. 379 (2004) .....................................................................................8

*Toscano v. United States*,
     98 Fed. Cl. 152 (2011) ..............................................................20, 22, 23, 24

*United States ex rel. Mohr v. J. Pease Constr. Co.*,
     No. 92 C 8342, 1994 WL 499137 (N.D. Ill. Aug. 29, 1994)................................15

*In re WorldCom Sec. Litig.*,
     496 F.3d 245 (2d Cir. 2007)............................................................................18

**STATUTES**

28 U.S.C. § 2501 ...........................................................................20, 21, 23, 24

Little Tucker Act ................................................................................................21, 24

Securities Act of 1933...........................................................................................25

Tucker Act  ....................................................................................... *passim*

**RULES**

Fed. R. Civ. P. 15(c) ....................................................................... *passim*

Fed. R. Civ. P. 23 ............................................................................ *passim*

RCFC 1 ...................................................................................................7

RCFC 15(c) ..................................................................................... *passim*

RCFC 23 ........................................................................................... *passim*

**OTHER AUTHORITIES**

6A Charles Alan Wright et al., *Federal Practice & Procedure* § 1501 (3d ed.
     2018) ...................................................................................................7, 10

*Moore's Federal Practice*, Vol. 3, § 23.12................................................................11

Stephen B. Burbank & Tobias Barrington Wolff, *Class Actions, Statutes of
    Limitations and Repose, and Federal Common Law*, FACULTY SCHOLARSHIP,
    May 14, 2018, https://scholarship.law.upenn.edu/cgi/viewcontent.cgi?article
    =2964&context=faculty_scholarship ....................................................................................27

3 William B. Rubenstein, *Newberg on Class Actions* § 9:30 (5th ed. 2018) ..................................7

## I.      <u>INTRODUCTION</u>

In its "Motion to Dismiss Time-Barred Claims," ECF No. 125, the Government advocates for extraordinary relief – the dismissal with prejudice of the majority of claims in this case on statute of limitations grounds.  The Government seeks this remedy despite the fact that it does not dispute, nor could it dispute, that it had been on notice of and actively defending these identical claims, in the form of a class action, since this case was filed against it on *the day after the floodway at issue was activated*.  Indeed, the Government advocates for this relief despite the fact that Plaintiffs were merely proceeding according to the schedule that the Government had bargained for and successfully moved the Court to order.  Specifically, throughout this case, the Government had affirmed to Plaintiffs and this Court that Plaintiffs who were not serving as representative Plaintiffs should proceed as absent class members and then affirmatively moved for a schedule, which was subsequently granted by this Court, setting class certification *more* than six years after the activation of the floodway and providing for an opt-in process roughly concurrent with when the Third Amended Complaint[1] was filed.  The relief requested now is unprecedented.  Indeed, Plaintiffs have been unable to find any federal court in the United States that has seen putative claimants transition from "absent" class members to named plaintiffs in a then-pending and timely-filed class action only to bar those individual claims by application of a statute of limitation.

For its Motion to be granted, the Government must succeed on both of two strained and ultimately unavailing arguments.  First, that the claims of the newly-named Plaintiffs do not "relate back" to the original class action claims that expressly encompassed them.  Second, that

---

[1] As the Government explains in its Motion, Plaintiffs erroneously labeled this filing the "Second Amended Complaint" but herein Plaintiffs adopt the Government's sensible convention of calling this the "Third Amended Complaint."

this Court should rule that class action tolling is not permissible in Tucker Act claims, despite the Federal Circuit's *Bright v. United States* decision from 2010 expressly holding that class action tolling *is* allowed in Tucker Act claims.  As explained herein, neither of these arguments has merit.  Established case law forbids the Government from proposing an agreed schedule for individual claimants to identify themselves and participate in the context of a pending class action and then trying to play a game of "gotcha" stemming from the Court's entry of the requested schedule and Plaintiffs' abiding by that proposal.  This conclusion does not depend on equity (although plainly it would be inequitable to reward such conduct) because these facts reveal that the claims were timely-filed as a class action of which the Government was on notice and actively defending.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

On the morning of May 2, 2011, faced with high water along the Mississippi River, the U.S. Army Corps of Engineers used dynamite to blow up sections of federal levees protecting the Birds-Point-New Madrid Floodway.  The very next day, Plaintiffs filed their Class Action Complaint alleging, *inter alia*, that the Corps had failed to purchase flowage easements over all of the floodway land that was subsequently inundated and that, by deviating from the express terms of those easements that they had acquired (most notably by exploding a third "fuse plug" that had not been part of the plan of operation that formed the basis of the original easements), the Corps had exceeded the scope of their easements.  Compl. – Class Action, May 3, 2011, ECF No. 1.  The original Class Action Complaint explained in detail the history of the floodway, the relevant easements, and the circumstances of the operation of the floodway.  It asserted Fifth Amendment takings claims and contract claims related to those alleged facts.  It was filed "on behalf of a Class consisting of: all persons and entities who owned property in the affected Birds

Point New Madrid County Floodway at the time the levee was breached by Defendant United States Corps of Engineers."  *Id.* ¶ 45.

Plaintiffs' Class Action Complaint was amended on July 11, 2011.  ECF No. 8.  On April 23, 2012, Plaintiffs filed their Second Amended Class Action Complaint, dropping a claim seeking specific performance of a term in the easements relating to compensation for any sand and gravel left on the subject properties from operation of the floodway and replacing it with a claim for breach of that term of the easement agreements.  Second Am. Class Action Compl., ECF No. 32.

On August 9, 2012, the parties filed their Joint Preliminary Status Report.  ECF No. 40. In it, the parties addressed the question, "Will additional parties be joined?"  *Id.* at 2.  The parties (jointly) explained that "If members of the putative class wish to proceed in this case as named plaintiffs *rather than absent class members*, such elections must be made by February 15, 2013." *Id.* (emphasis added).  The filing also laid out a proposed schedule for RCFC 56 Motions to be filed in late 2013 and provided that, "[o]nce the Court has ruled on any RCFC 56 motions on liability, and assuming the case proceeds, the parties will confer and promptly make a proposal to the Court regarding the schedule for [*inter alia*] briefing regarding class certification[.]"  *Id.* at 5.  Thus, the Government anticipated and agreed from the early days of this case to a process where class members could choose to proceed as named class representatives or to remain as absent class members until class certification and opt in at that time.[2]

---

[2] The Government accuses Plaintiffs of a "post-hoc" and "misleading" characterization of the claimants as "absent class members" who are converting class claims to individual claims.  *See* United States' Mot. to Dismiss Time-Barred Claims (hereinafter "MTD"), Apr. 27, 2018, ECF No. 125 at 5-6.  This is simply a bizarre accusation, since the Government itself signed the Joint Preliminary Status Report which used that identical language and explicitly proposed a process by which unnamed class members could either elect to proceed as named Plaintiffs or continue

Subsequent to that date, the parties have filed a number of joint status reports and proposed scheduling orders proposing a combination of partial summary judgment motions and bellwether claims to narrow the issues in this case while preserving party and court resources. *See, e.g.*, Joint Status Report, Mar. 3, 2015, ECF No. 77 at 1 ("The parties' desire is to . . . (1) stipulate to as many material and undisputed facts as possible; (2) identify a limited number of named Plaintiffs upon which the parties can focus concentrated discovery efforts; and (3) determine whether, and if so upon what schedule, the case can be presented to the Court on motions for summary judgment."); Joint Status Report, Sept. 18, 2015, ECF No. 86 at 2 ("Mindful of the Court's preference that summary judgment briefing proceed *seriatum*, the parties propose to approach summary judgment one plaintiff at a time. Such an approach will ensure that the number of liability issues addressed at any one time is manageable, and will allow the holdings with respect to each plaintiff to inform and narrow the issues that need to be briefed and decided with respect to each successive plaintiff. Indeed, it is conceivable that after only one or two such rulings, the Court may provide the parties with sufficient guidance to resolve all claims, including non-bellwether claims, through mediation."). The parties have followed up by identifying bellwether claims for discovery and filing cross-motions for summary judgment, which were denied in a twenty-page opinion on March 17, 2017. *See* ECF No. 113.

On April 28, 2017, the Government filed a joint proposed schedule in the wake of that ruling. ECF No. 116. This date is salient since it reflects a filing *three business days prior* to the date that the Government now maintains was the cut-off for any individual Plaintiffs to come forward and assert claims in their individual capacities. That April 28, 2017 filing expressly stated that the parties had conferred regarding discovery issues in light of the fact that "this is a

---

as absent class members who would not be identified until after class certification, which would be briefed after summary judgment. *See* ECF No. 40.

complicated case due to the numerous properties involved, therefore, fact discovery will require

a significant amount of time." *Id.* Per that requested schedule, Plaintiffs' Motion for Class

Certification would be due on September 22, 2017 – more than six years after the floodway was

inundated. *Id.* While the filing did not specify the rest of the briefing schedule, opposition and

reply briefing would obviously follow and, in the event a class certification order was issued,

notice would be issued per RCFC 23(c)(2)(B) laying out the time and manner for requesting

inclusion. On May 30, 2017, the Court adopted the parties' proposed discovery schedule. *See*

ECF No. 117.

On September 21, 2017 the parties filed a consent motion to extend the deadline for class

certification for 60 days (which motion was signed by DOJ and Plaintiffs). ECF No. 118. That

motion explained that the parties were conferring about "whether a class action is the best

vehicle for resolving the Plaintiffs' claims or whether other procedural avenues might be more

efficient" and that the extension would "allow the parties to more fully consider the complexities

of this case and the best manner in which to address them before burdening this Court with a

class certification motion." *Id.* The next day, the Court entered a scheduling order reflecting the

parties' new requested dates. ECF No. 119.[3]

On November 21, 2017, the parties filed a joint status report indicating that the Plaintiffs

would be filing an amended complaint that would drop class claims and may instead "reflect the

---

[3] The Government accuses the newly-named Plaintiffs of "[sitting] on their rights." MTD at 6.
The procedural history of this case clearly indicates, however, that Plaintiffs repeatedly conferred
with the Government about the appropriate timing and procedure for addressing unnamed
Plaintiffs' claims and reached agreements regarding scheduling of such processes that were filed
with the Court and subsequently ordered, including from the early days of this litigation as well
as immediately before *and after* the Government now claims that their claims were barred.
Thus, it is inaccurate to say that Plaintiffs "sat on their rights" and is more accurate to say that
Plaintiffs engaged with the Government about their claims and mistakenly relied upon the
Government's affirmative representations about scheduling and Orders issued by the Court
consistent with those affirmative representations.

explicit addition of previously unnamed class members who wish to proceed in the litigation in light of the fact that their claims will not be pursued in a class action." ECF No. 120.  That filing represented the first time the Government indicated that it would move to dismiss any such claims as being time-barred.  *Id.*  On March 16, 2018, Plaintiffs moved for leave to file the Third Amended Complaint, which identified additional named Plaintiffs and removed references to class action claims.  ECF No. 121.  The motion for leave explained that bypassing class certification briefing, hearings and opinions, and avoiding notice and a process for opting in, would save the parties and the Court time and resources.  *See id.* at 2.  That motion was unopposed.  *See* ECF No. 123 ¶ 1.  This Motion to Dismiss followed on April 27, 2018.

Plaintiffs offer one further factual clarification: it its Motion to Dismiss, the Government states that "Plaintiffs seemingly acknowledge that they only engaged in discussions about proceeding with individual claims after the statute of limitations expired."  MTD at 6.  In fact, Plaintiffs did not "acknowledge" this, because it is not true.  Many of the newly-named Plaintiffs not only "discussed" proceeding with individual claims in this case, but signed retainer agreements engaging counsel to do so well before May of 2017.  Plaintiffs did not file these claims in express reliance on the scheduling agreements reached with the Government and, secondarily, on their research confirming that their claims would "relate back" to the original Complaint when filed in this action and that the statute of limitations would be tolled with respect to their claims during the pendency of this action.  Should the Court find it relevant and helpful, Plaintiffs would be happy to provide copies of such retainer agreements and/or declarations to this effect.

## III.   <u>LEGAL STANDARDS</u>

Federal courts apply Rule 15(c) "very liberally."  *Snoqualmie Tribe of Indians ex rel. Skykomish Tribe of Indians v. United States*, 372 F.2d 951, 960 n.5 (Ct. Cl. 1967) (also noting

6

"[t]his is consistent with the goal of modern procedure to lessen the perils of pleading").  While all of the Federal Rules are to be applied to ensure "just" determinations pursuant to RCFC 1, Rule 15 contains an independent and distinct instruction that leave to amend and supplement pursuant to the Rule should be "freely give[n] . . . when justice so requires."  As Wright and Miller observe about the analogous Fed. R. Civ. P. 15, "[a]s long as defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action, defendant's ability to protect itself will not be prejudicially affected if a new plaintiff is added, and defendant should not be permitted to invoke a limitations defense."  6A Charles Alan Wright et al., *Federal Practice & Procedure* § 1501 (3d ed. 2018) (citing cases); *see also Snoqualmie*, 372 F.2d at 960 n.5 ("Of course, there must be limits on amendments, but the notice requirement performs this job.").

Class tolling is rooted in RCFC 23 and its policy of avoiding multiplicity of actions.  *See generally Bright v. United States*, 603 F.3d 1273 (Fed. Cir. 2010).  Class actions generally involve named representatives and absent class members and intervention or amendment to transform from an absent to named party is commonplace.  *See, e.g.*, 3 William B. Rubenstein, *Newberg on Class Actions* § 9:30 (5th ed. 2018) (Rule 23 "imagine[s] absent class members taking an active role in a class suit through intervention, that is, by transforming themselves from *absent* class members to *named parties* to the lawsuit" and "an absent class member is not required to intervene in order to toll the statute of limitations on her individual action[.]") (emphasis in original); *In re Pharm. Indus. Average Wholesale Price Litig.*, 277 F.R.D. 52, 59 (D. Mass. 2011) ("the Court has wide discretion in allowing a motion to add new class representatives").  While the Government devotes much of its discussion of legal standards to the "jurisdictional" nature of the statute of limitations in the Tucker Act, this is irrelevant because

RCFC 23 tolling "does not modify a statutory time limit" since the class complaint encompassing the claims of all plaintiffs must be timely filed and put the Government on timely notice of potential claims for tolling to apply.  *Bright*, 603 F.3d at 1287-88.

## IV.   ARGUMENT

**A.  THE THIRD AMENDED COMPLAINT RELATES BACK TO THE ORIGINAL COMPLAINT IN THIS LITIGATION AND THUS DOES NOT IMPLICATE TOLLING CONCERNS**

> **1.   Because the Third Amended Complaint Comports With the Plain Language of Rule 15(c) and the Government Had Notice of the Intent to Identify These Additional Plaintiffs' Claims, the Government's Motion Must Be Denied.**

Leave to file the Third Amended Complaint was sought under Rule 15 as an amendment that "relates back" to the original Complaint.  ECF No. 121 at 2-4, 5-7.  Once granted, the Third Amended Complaint would be deemed a mere amendment of the original Complaint, obviating any statute of limitations issues or tolling issues.  *See Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1370 n.5 (Fed. Cir. 2004) (where a complaint relates back to a timely original complaint, it avoids any consideration of tolling or whether a course of dealing between DOJ and private parties served to toll statutes of limitations).  The motion for leave was not opposed by DOJ, ECF No. 123 ¶ 1, and amendment was granted by this Court, ECF No. 124, making the Third Amended Complaint the current operative complaint.  The Government now argues that the claims of the newly-named Plaintiffs do not "relate back" to the original Class Action Complaint and therefore the filing date of the claims cannot be deemed to be May 3, 2011.  The Government is wrong.

RCFC 15(c), like Fed. R. Civ. P. 15(c), exists predominantly, if not solely, to ensure that mere amendments to pending complaints do not implicate complicated statute of limitations and tolling concerns.  *See Stockton E. Water Dist. v. United States*, 62 Fed. Cl. 379, 391-92 (2004) ("The rationale of the 'relation back' doctrine, which is inextricably linked to the rationale of the

statute of limitations, 'is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.'") (quoting *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 150 (1984)); *Intrepid v. Pollock*, 907 F.2d 1125, 1130 (Fed. Cir. 1990) (describing interrelationship between Rule 15(c) and statute of limitations).  When it applies, amended complaints are "deemed filed" on the date of the original complaint, regardless of whether new parties or claims are added.  *See Hawkins v. Groot Indus., Inc.*, 210 F.R.D. 226, 232 (N.D. Ill. 2002) (citation omitted).

Rule 15(c)(1)(B) of the RCFC is straightforward.  In its entirety, it provides, "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]"  *See* RCFC 15(c).  There can be no serious question that the Third Amended Complaint asserts claims "that arose out of the same conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading" in this case.  *Id.*

The original Class Action Complaint explained in detail the history of the floodway, the relevant easements, and the circumstances of the operation of the floodway.  It asserted takings and contract claims related to those alleged facts.  It was filed "on behalf of a Class consisting of: all persons and entities who owned property in the affected Birds Point New Madrid County Floodway at the time the levee was breached by Defendant United States Corps of Engineers."  ECF No. 1 ¶ 45.  The Third Amended Complaint repeats *verbatim* these descriptions of the history of the floodway, the relevant easements, and the circumstances of the operation of the floodway from the original pleading in the case.  There is not a *single* allegation of conduct that differs between the initial Complaint and the Third Amended Complaint, nor are there

9

descriptions of any additional – or any fewer – transactions or occurrences described in the Third

Amended Complaint that were not present in the original pleading.  The Third Amended

Complaint brings identical takings claims and contract claims related to those alleged facts.[4]  The

sole relevant difference is the additional identification of Plaintiffs who comprised a subset of the

"persons and entities who owned property in the affected Birds Point New Madrid County

Floodway at the time the levee was breached" on whose behalf the original Complaint was filed.

For Rule 15(c), "[t]he linchpin is notice, and notice within the [statute of] limitations

period."  *Schiavone v. Fortune*, 477 U.S. 21, 31 (1986); *see also Staren v. Am. Nat'l Bank &*

*Trust Co.*, 529 F.2d 1257, 1263 (7th Cir. 1976) ("[N]otice is the critical element involved in Rule

15(c) determinations.").  "As long as defendant is fully apprised of a claim arising from specified

conduct and has prepared to defend the action, defendant's ability to protect itself will not be

prejudicially affected if a new plaintiff is added, and defendant should not be permitted to invoke

a limitations defense."  6A Charles Alan Wright et al., *Federal Practice & Procedure* § 1501 (3d

ed. 2018) (citing cases).  The Federal Circuit has stated "notice is the test, and it is built-into the

rule's requirement that the amended pleading arise out of the same 'conduct, transaction, or

occurrence.'  In other words, the inquiry in a determination of whether a claim should relate back

will focus on the notice given by the general fact situation set forth in the original pleading."

*Snoqualmie*, 372 F.2d at 960.  Thus, the Supreme Court, the Federal Circuit, and the leading

---

[4] As explained above, there is one technical difference between the original Complaint and the
Second and Third Amended Complaints regarding the claims relating to sand and gravel
remediation.  Whereas the original Complaint sought specific performance relating to that term,
Plaintiffs converted that claim to breach in the Second Amended Complaint after some passage
of time without government performance.  Plaintiffs do not understand the Government to be
advancing the argument that the Second Amended Complaint does not relate back to the original
pleading or that the Third Amended Complaint does not relate back for the reason of alleging
breach rather than seeking specific performance.  And indeed, such an argument would be
untenable under RCFC 15(c).

academic commentators agree that the addition of new plaintiffs or claims to a complaint satisfies Rule 15(c) whenever the defendant was placed on notice of such claims in the original pleading.  Because the Government was plainly on notice from the outset that this case involved claims of similarly situated Plaintiffs not named in the original pleading, this is an easy issue to decide.

Allowing relation back here would be consistent with well-settled law regarding the interaction of Rule 15(c) and class actions.  As this Court is likely aware, opt-in class actions were prevalent in federal courts throughout the country prior to the sweeping 1966 Amendments to Fed. R. Civ. P. 23.  As a result, the circumstance of an amendment to add newly "named" plaintiffs from a "putative" or "spurious" class action was more common in federal district courts during the decades that preceded those Amendments.  Not only was it routinely recognized that such amendments related back to previously filed complaints under Fed. R. Civ. P. 15(c) and did not implicate statutes of limitations, but such situations were regarded as paradigmatic applications of the Rule.  *See Aarhus Oliefabrik, A/S v. A.O. Smith Corp.*, 22 F.R.D. 33, 36 (E.D. Wis. 1958) (listing the most common applications of Rule 15(c) and stating, "[a] plaintiff may usually amend under [Rule] 15(c) to . . . add additional plaintiffs where the action, as originally brought, was a class action") (citing *Moore's Federal Practice*, Vol. 3, § 23.12, p. 3476); *cf. Newberg v. Am. Dryer Corp.*, 195 F. Supp. 345, 349 (E.D. Pa. 1961) ("It has often been held . . . that the bringing of a spurious class action tolls the statute of limitations while other potential plaintiffs decide whether or not to join in the action.").

Subsequent to the 1966 Amendments, federal courts have continued to find that adding newly-named plaintiffs from among a putative class falls within Rule 15(c) where those plaintiffs' claims would otherwise be time-barred.  *See Plubell v. Merck & Co.*, 434 F.3d 1070,

1073 (8th Cir. 2006) (Permitting relation back under Rule 15(c) for newly-named plaintiff from putative class because "the claims alleged in both the original and the amended pleadings are exactly the same . . . although [the newly-named plaintiff] is only a putative member of the original class, which has not yet been certified, [defendant] still knew or should have known that it must defend against Plubell's claims.  Plubell is only 'newly-added' in that she became the named class representative."); *In re Glacier Bay*, 746 F. Supp. 1379, 1391 (D. Alaska 1990) (newly-named plaintiffs' complaint related back to originally-filed class complaint because original "class complaints put defendants on notice that all those involved in the fishing industry in Cook Inlet were potential plaintiffs"); *Genesee Cty. Emps.' Ret. Sys. v. Thornburg Mortg. Sec. Trust 2006-3*, 825 F. Supp. 2d 1082, 1164-65 (D.N.M. 2011) (permitting relation back of complaint of newly-named plaintiffs who were absent members of previously filed class action); *Allen v. Similasan Corp.*, 96 F. Supp. 3d 1063, 1069 (S.D. Cal. 2015) (to determine whether the defendant had adequate notice of the new proposed named plaintiff's claims in the original complaint "courts examine whether the original complaint clearly stated that the plaintiff sought to represent others"); *Fauvergue v. United States*, 85 Fed. Cl. 50, 58-59 (2008) ("Upon plaintiffs' filing of a timely class action complaint, defendant was notified of the cause of action, the possibility that defendant would have to defend against a broader claim, and the provenance of these new claims from closely related parties. . . .  All plaintiffs, including the newly named plaintiffs from the putative class, have claims that, under *Snoqualmie*, arise out of the same transaction originally presented by Ms. Fauvergue in her timely filed complaint.  Moreover, the general fact situation, especially in the context of a class-action complaint, provided defendant with notice that other plaintiffs could enlarge the suit.").[5]  This is not a novel or difficult issue.

---

[5] Despite the language and finding in this opinion, the *Fauvergue* court later issued an order

This Court should find that relation back is appropriate under Rule 15(c) and the Government's Motion should be denied on this ground alone.

### 2. The Government's Offer of a Cramped Interpretation of the "Identity of Interest" Test Does Not Save Its Motion.

The Government acknowledges that the "relation back" doctrine embodied in Fed. R. Civ. P. 15 may apply in certain circumstances to new plaintiffs in Tucker Act cases. *See* MTD at 6-11. The Government argues, however, that because the newly-named Plaintiffs in the instant action are distinct from the originally-named Plaintiffs, they do not share an "identity of interest" with the Plaintiffs in the initial Complaint and, therefore, their claims do not relate back to the original pleading. This argument is meritless. As an initial matter, even those courts that do require newly-named plaintiffs to demonstrate "identity of interest" with original plaintiffs for their claims to relate back – and, indeed, some reject this test as inconsistent with Rule 15(c) – typically recognize that it must be liberally construed and merely reflects the concept of adequate notice. Indeed, several of the very cases cited in the Government's brief expressly reject the cramped interpretation of the "identity of interest" test it advances. Regardless, however, even the strictest "identity of interest" test would be satisfied where, as here, an original class complaint explicitly gave notice of and purported to encompass the later named plaintiffs' claims and where, as here, the Government's prior filings in the case uniformly revealed its awareness of additional claims, and proposed schedules and procedures to address those claims.

The Federal Circuit has never endorsed the use of a multi-factored judicially-created test in lieu of simply looking to the text of Rule 15(c). *See, e.g.*, *Fauvergue*, 85 Fed. Cl. at 54 n.7

---

finding that plaintiffs who failed to opt into the class within six years were time-barred from proceeding and that Rule 15(c) would not help them. The court's reasoning in this subsequent order was faulty and that order was reversed by the Federal Circuit in *Bright v. United States*, 603 F.3d 1273 (Fed. Cir. 2010).

(observing that the Federal Circuit has never endorsed or articulated a multi-factored test for Rule 15(c) that includes "identity of interest").[6]  It is true, however, that to determine whether an amendment adding a new plaintiff relates back to the original compliant, some (but not all) courts apply judicially-created three- or four-part tests, including determining whether plaintiffs share an "identity of interest."  *See Plubell*, 434 F.3d at 1072 (8th Cir. 2006) ("To determine whether an amendment adding a new plaintiff relates back to the original complaint, federal courts generally *either* interpret Rule 15(c)(3) *or* apply a judicially-created test.") (emphasis added); *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1131-32 (11th Cir. 2004) ("Other courts have developed their own tests for determining whether an amendment adding plaintiffs should relate back.  While these courts do not explicitly apply Rule 15(c)(3), their judicially-created tests still turn upon considerations of notice and prejudice.").

Even those courts that do apply the "identity of interest" test typically reject the Government's position that this requires that plaintiffs share a "formal" legal identity and connection rather than a more general shared interest that results from bringing identical causes of action based on the same conduct, transactions, and occurrences.  Essentially, the Government's proffered test would require privity between original and subsequent filers, which would inject a new element not present in the Rule itself and runs afoul of the Federal Circuit's admonition that the determination will focus on "the notice given by the general fact situation set

---

[6] *Fauvergue* cited *Olech v. Village of Willowbrook*, 138 F. Supp. 2d 1036, 1044-45 (N.D. Ill. 2000) as one of the leading cases to advance the four-part test.  *Olech* expressly recognized that it was departing from the text of Rule 15(c) in applying the test, but also noted that the "relation back" doctrine should be "liberally applied" and "freely allowed" and that the touchstone of application remained fair notice and a lack of undue prejudice to defendants.  *Id.* at 1041, 1046-47.  Thus, in the event that this Court determines that it ought to depart from the text of Rule 15(c) and apply a multi-factored test that requires "identity of interest" between original and newly-added Plaintiffs, it should be mindful that any such test should be liberally applied and remain grounded to fair notice and a lack of undue prejudice to the Government regarding the newly-named Plaintiffs' claims.

forth in the original pleading."  *Snoqualmie*, 372 F.2d at 960.[7]  Indeed, Defendants' *own* cited

cases explain this well.  In *Staren v. American National Bank & Trust Co.*, 529 F.2d 1257, 1263

(7th Cir. 1976) (emphasis added), the Seventh Circuit stated:

> When Staren and Company, Inc., was substituted as plaintiff in the amended complaint, the district court and defendants contended that this corporate plaintiff constituted a complete separate entity from the individual plaintiffs and its claim did not relate back, but rather it stated an entirely new cause of action.  This contention misses the point and is not necessarily so.  *The emphasis is to be placed on the determination of whether the amended complaint arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading.*

In *Nielsen v. Professional Financial Management, Ltd.*, 682 F. Supp. 429, 436 (D. Minn.

1987), the court explained:

> Although there is no close identity of interest between the individual investors here, the court nonetheless finds that the claims of the added plaintiffs should relate back to the filing date of the original complaint.  Implicit in the 'identity of interest' factor is a concern that the defendant 'has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits. . . .'  As the Supreme Court stated in *Schiavone v. Fortune*, '[t]he linchpin is notice . . . .'  Here, defendants had notice of the possible claims of new plaintiffs[.]

Other courts to have considered this issue are in agreement.  *See United States ex rel.*

*Mohr v. J. Pease Constr. Co.*, No. 92 C 8342, 1994 WL 499137, at *4 (N.D. Ill. Aug. 29, 1994)

(acknowledging that new plaintiffs unrelated to original plaintiffs weakens the "identity of

interest" but finding relation back appropriate after analyzing cases and observing that "implicit

in the 'identity of interest' factor is a concern that the defendant has received such notice of the

---

[7] The 2002 Rules Committee Notes to RCFC 15 note that RCFC 15(c) was conformed to the FRCP, regarding which the 1966 Advisory Committee Notes to Fed. R. Civ. P. 15 explain that "[t]he relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier."  Requiring privity or formal relationships for changed or added plaintiffs would depart from this rationale.

institution of the action that it will not be prejudiced in maintaining its defense on the merits");

*In re Osage Expl. Co.*, 104 F.R.D. 45, 49 (S.D.N.Y. 1984) (claims of seven new unrelated

plaintiffs relate back because "the claims of the proposed additional plaintiffs involve questions

of law and fact common to each other and common to those asserted by the original plaintiffs");

*Adair v. Hunt Int'l Res. Corp.*, 526 F. Supp. 736, 739-40 (N.D. Ill. 1981) (permitting relation

back of 675 new plaintiffs because their claims' concerned the same conduct as original

plaintiffs' claims and additional exposure to liability was not the type of prejudice that warranted

denial of leave to amend).  Even where the Court of Federal Claims has applied the "identity of

interest" test, it has similarly expressed that the test is intended to address questions of fair notice

and avoiding undue prejudice.  *See Holland v. United States*, 62 Fed. Cl. 395, 407 (2004)

("When determining whether an amendment should relate back, the 'fundamental question is not

why the plaintiff failed to act sooner, but rather whether the late addition to the case comes

without fair notice to the defendant and would cause undue prejudice.'") (citation omitted).

Ultimately, however, whether and how meticulously this Court applies an "identity of

interest" test is largely academic.  Because the original Class Action Complaint *expressly*

informed the Government that it was being brought "on behalf of a Class consisting of: all

persons and entities who owned property in the affected Birds Point New Madrid County

Floodway at the time the levee was breached[,]" ECF No. 1 ¶ 45, and because the newly-named

Plaintiffs are indeed all persons or entities who owned property in the affected floodway, notice

was clear and immediate and no undue prejudice can possibly result from relation back.  The

original claims and the "new" claims overlap completely in their substance and share perfect

identity of interest.  *The Government cannot credibly assert that it had no notice that additional*

*Plaintiffs would be pursuing their claims when it has periodically filed status reports and*

*proposed schedules with plans for how to address those claims.* Similarly, the Government cannot claim to be prejudiced by these newly-named Plaintiffs' claims since they, like all other non-bellwether claims, would not be subject to detailed discovery for some time and since each scheduling proposal in this case has explicitly addressed the timing and mechanisms for resolving these claims.

This is why even courts that require an "identity of interest" between original plaintiffs and new plaintiffs to satisfy Rule 15(c) find the test satisfied where, as here, the new plaintiffs were encompassed in an original class action pleading. *See, e.g.*, *Immigrant Assistance Project of L.A. Cty. Fed'n of Labor (AFL-CIO) v. Immigration & Naturalization Serv.*, 306 F.3d 842, 857-58 (9th Cir. 2002) (formerly unnamed putative class members' individual and class claims related back to original class action complaint with otherwise unrelated named plaintiffs; "[b]ecause the original individual plaintiffs and the current individual plaintiffs are 'similarly situated,' the identity-of-interest requirement of Rule 15(c) is also met"); *In re Glacier Bay*, 746 F. Supp. at 1390-91 (discussing "identity of interest" before stating "[w]hile a large number of the cases allowing relation back under Rule 15(c) do involve legal or familial relationships, the language of Rule 15(c) does not impose a requirement for a legal or familial relationship" and concluding the new claims would relate back "whether they were filed by putative class members or not, because defendants had notice that all of those in the Cook Inlet commercial fishing industry were potential plaintiffs"); *Genesee Cty. Emps.' Ret. Sys.*, 825 F. Supp. 2d at 1164-65 (permitting relation back of complaint of newly-named plaintiffs who were absent members of previously filed class action because "there is sufficient identity of interest between Genesee County, the two newly added plaintiffs, and their respective claims to give the

Defendants fair notice of the latecomer's claim against them.  The same causes of action appear in the Original Complaint and the Amended Complaint").

Tellingly, the Government almost entirely avoids mention of the fact that this case was a putative class action during its discussion of the "relation back" doctrine and analyzes that issue as though the fact this case was pled and litigated as a class action was a non-factor.  *See* MTD at 6-11 (not citing any class action cases and only once mentioning the "mere reference to a class action in the original complaint" does not change the analysis).  Fully addressing that fact would fatally undermine its argument that there is not a shared identity of interest.  But that critical fact cannot and should not be ignored, because it bears directly on the scope of notice provided by the original Complaint and on why there is no prejudice here – the two critical factors universally recognized to govern determinations under Rule 15(c).[8]

---

[8] The fact that the Third Amended Complaint was filed before (and in lieu of) a class certification motion as opposed to afterwards does not change the basic analysis under Rule 15(c) *or* under Rule 23 tolling.  Indeed, it somewhat *strengthens* Plaintiffs' position that the filing related back.  *See Genesee Cty. Emps.' Ret. Sys.*, 825 F. Supp. 2d at 1164-65 (permitting relation back of complaint of newly-named plaintiffs who were members of previously-filed class action and observing, "[i]n the context of class actions, courts also show more willingness to allow relation back when a district court has not yet denied class certification, as the newly-added plaintiffs are not trying to relitigate the propriety of the class action") (citing additional cases).  Moreover, numerous federal appellate courts have considered and squarely rejected the argument that individual plaintiffs relying upon class action tolling must wait for a class certification decision before filing their successive individual claims.  *See In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1009 (9th Cir. 2008) (putative class plaintiffs whose claims are tolled "have a right to file at the time of their choosing"); *In re WorldCom Sec. Litig.*, 496 F.3d 245, 254–56 (2d Cir. 2007) ("As the Supreme Court has repeatedly emphasized, the initiation of a class action puts the defendants on notice of the claims against them. . . .  A defendant is no less on notice when putative class members file individual suits before certification.") (citation omitted); *State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1230–31 (10th Cir. 2008) (holding the same and relying heavily on the *Crown, Cork & Seal* rule that "once the statute of limitations has been tolled, *it remains tolled for all members of the putative class until class certification is denied*") (emphasis in original) (citation omitted); *see also Lehman v. United Parcel Serv., Inc.*, 443 F. Supp. 2d 1146, 1151 (W.D. Mo. 2006) (noting it would run contrary to any known principle governing statutes of limitations "to say that [a successive plaintiff] must wait until the dispute is more stale before he can file his individual case.").

The Government also places great reliance on *Creppel v. United States*, 33 Fed. Cl. 590 (1995). Indeed, *Creppel* – which, importantly, was not a class action – is an extreme outlier insofar as it suggests that a "formal" relationship must exist between original plaintiffs and subsequently named plaintiffs.[9]  Nonetheless, even *Creppel* does not save the Government, because even it recognizes that the critical inquiry is whether "the government received adequate notice of the possibility that it might have to defend against a broader claim." *Id.* at 595 (quoting *Snoqualmie*, 372 F.2d at 961). *Creppel* ultimately refused to allow relation back because the original complaint did not adequately put the Government on notice of the potential for additional plaintiffs. The court determined that no inference could be justified from the original complaint that anyone other than the original named plaintiffs were "in some way asserting a takings claim." *Id.* at 597. In the present case, however, one need not draw *any* inference since the Complaint *explicitly* stated that it was being filed on behalf of other still-to-be-identified landowners in the floodway. ECF No. 1 ¶ 45. That the Government was on notice that absent class members were still planning to press their claims is further evidenced by the repeated joint status reports and scheduling requests made *throughout* the life of this case (including before and after May of 2017) discussing and establishing a timeframe for class certification which would, of course, have been a moot exercise if the original named Plaintiffs were the only parties with surviving claims against the Government. In fact, the Joint Preliminary Status Report (filed by the Government) plainly recognized that "members of the putative class" could either choose to proceed as "named plaintiffs" or as "absent class members." ECF No. 40 at 2.

---

[9] In this regard, *Creppel* was wrongly decided. It is inconsistent with the text of Rule 15(c), the dictates of the Federal Circuit, and the leading cases in this area as explained *supra*. As explained *infra*, however, this Court need not expressly consider whether *Creppel* was correctly decided because its reasoning is plainly not applicable where, as here, the original complaint was a class complaint expressly brought on behalf of the subsequently-named plaintiffs.

Because the Third Amended Complaint relates back to the original Complaint in this case under Rule 15(c), the Government's Motion must be denied, and this Court need not consider the alternative arguments discussed below.

## B.  THE ORIGINAL COMPLAINT TOLLED CLAIMS OF ABSENT CLASS MEMBERS AND THUS THE NEWLY-NAMED PLAINTIFFS' CLAIMS ARE TIMELY

In order to prevail on its motion, the Government must show not only that Plaintiffs' claims do not "relate back" to the initial Class Action Complaint (as demonstrated above, they plainly do), but also that absent class members' claims were not tolled during the pendency of the class action.[10]  Case law from both this Court and the Federal Circuit, however, directly hold that the filing of a putative class action tolls the statute of limitations for *all* absent class members.  *See Bright v. United States*, 603 F.3d 1273 (Fed. Cir. 2010); *Geneva Rock Prods., Inc. v. United States*, 100 Fed. Cl. 778, 783 (2011); *Toscano v. United States*, 98 Fed. Cl. 152, 154-55 (2011); *see also Fisher v. Duff*, No. C15-5944 BHS, 2016 WL 3280429, at *3 (W.D. Wash. June 15, 2016).

In *Bright*, the Federal Circuit expressly held that (1) "class action tolling is available under an opt-in scheme[,]" including under 28 U.S.C. § 2501; and (2) "[t]he statute of limitations *is tolled during the period the Court of Federal Claims allows putative class members to opt in to the class.*"  603 F.3d at 1285, 1290 (emphasis added).  The Federal Circuit so held in order to

---

[10] "Class tolling" and "relation back" are two entirely different concepts that only occasionally present in the same case.  Class tolling allows absent class members to bring subsequent actions in any court in the United States when they would otherwise be barred by the statute of limitations.  Relation back allows new claims or parties into existing and ongoing litigation where an initial complaint was timely filed.  These two distinct issues only present in the same case in the context where there is a proposed amendment to an existing class action that implicates new claims or parties who would otherwise be time-barred.  Where the two issues present in the same case, a finding of the applicability of one moots the applicability of the other. In *Bright*, for example, the Federal Circuit expressly declined to reach the issue of relation back because it determined that class tolling applied.  *Bright*, 603 F.3d at 1290-91.

avoid the "multiplicity of actions" the class action device was intended to prevent, *id.* at 1285; to

avoid "an anomalous difference between the conduct of class action litigation under the Tucker

Act, 28 U.S.C. § 1491(a)(1), and the Little Tucker Act, 28 U.S.C. § 1346(a)(2)[,]" *id.* at 1289;

and to avoid "plac[ing] on the court the burden of timing class certification and implementing

opt-in procedures in such a way as to make sure that the limitations period was met." *Id.* at

1288.

      In *Bright*, the plaintiffs filed a motion for class certification before the expiration of the

limitations period.  The Federal Circuit held that class tolling applied, but left "for another day

the question of whether tolling would be allowed where class certification was sought after

expiration of the limitations period."  603 F.3d at 1290 n.9.

      In the instant case, Plaintiffs filed their initial Complaint on the day after the claims

accrued, on behalf of a class that included the newly-named Plaintiffs.  Plaintiffs did not,

however, file a motion for class certification prior to expiration of the limitations period.[11]

      The Government argues that this difference from the facts of *Bright* precludes the

application of class tolling, claiming:

> Indeed, *in every case* within the Federal Circuit in which courts
> have allowed tolling of class action claims *the representative
> plaintiffs filed both a class action complaint and a motion for class
> certification prior to expiration of the limitation period*.

MTD at 14 n.4 (emphasis added).

      This is simply not true.  In fact, in at least two cases decided after *Bright*, the Court of

Federal Claims has expressly held that class tolling applies to section 2501 claims where

---

[11] As noted above, the deadline for filing a class certification motion was repeatedly postponed
by agreement of the parties and by Order of this Court, in order to facilitate the orderly litigation
of this matter, and ultimately was set for after the expiration of the limitations period.  ECF No.
117.

plaintiffs filed a motion for class certification *after* expiration of the limitations period.  *Geneva Rock Products*, 100 Fed. Cl. at 783; *Toscano*, 98 Fed. Cl. at 154-55.

In *Toscano*, plaintiffs filed their class action complaint just prior to expiration of the statute of limitations, but did not move for class certification until after the statute had run.  The Government argued that the case fell within the category of cases left open by footnote 9 of *Bright*, and that the statute of limitations barred the claims of those plaintiffs not named in the initial complaint.  This Court disagreed, noting that the Federal Circuit held in *Bright* that plaintiffs' claims were tolled if they "sought" class certification prior to expiration of the statute of limitations, and that plaintiffs in *Toscano* had sought class certification in their initial complaint, which requested certification of a class containing the new plaintiffs.  *Toscano*, 98 Fed. Cl. at 154-55.  The *Toscano* court noted that its decision would have been the same – i.e., the new plaintiffs' claims would be timely – even if the case were deemed to present a question left open by *Bright*.  *Id.* at 154 n.2.

This Court reached the same conclusion in *Geneva Rock Products*.  In that case, as in *Toscano*, plaintiffs filed an initial class action complaint prior to expiration of the statute of limitations, but did not file a motion for class certification until after the statute had run.  The Court's reasoning in *Geneva Rock Products* is equally applicable here:

> As the government is quick to point out, the facts of the present case are not identical to those of *Bright*.  In *Bright*, the named plaintiff filed a motion for class certification prior to the expiration of the statute of limitations.  Geneva Rock filed its complaint seeking class certification before the statute of limitations ran **but filed its motion to certify well afterward**. . . .  In deciding what to make of this discrepancy, the court takes into account the reasoning of a recent opinion that tackled this very issue.  *See Toscano v. United States*, 98 Fed. Cl. 152 (2011).
>
> In *Toscano*, as in this case, the named plaintiffs filed a timely class-action complaint but did not submit a motion for class

certification until after the statute of limitations had run. The trial court applied the holding of *Bright*, which tolled the statute of limitations when 'class certification is *sought* prior to the expiration of the section 2501 limitations period.' It reasoned that, in the case before it, the plaintiffs' complaint 'explicitly request[ed] certification of the class.' Consequently, **the later filing of the motion for class certification was inconsequential; the statute of limitations period was tolled from the date of the complaint**.

This court finds the logic of *Toscano* persuasive. Although the decision in *Bright* mentions the submission of plaintiff's motion to certify the class, **it focuses on when the plaintiff actually informed the court (and defendant) that it sought class certification by filing a properly-worded complaint**. Indeed, as the *Toscano* opinion points out, RCFC 23 does not by its terms refer to—let alone require—a motion for class certification. 'The clear implication is that the court may certify or deny the class on the basis of the complaint.' **Thus, *Bright*'s tolling of the statute of limitations was contingent not on a motion for class certification, but rather on the plaintiff's seeking class certification which may be done through class-action allegations in a complaint**.

*Geneva Rock Products*, 100 Fed. Cl. at 783 (italics and alteration in original) (bold emphasis added) (citations omitted).[12]

In this case, as in *Geneva Rock Products* and *Toscano*, Plaintiffs' initial Complaint contained class action allegations, but no class certification motion was brought within six years of the accrual of the causes of action. This Court should follow those well-reasoned cases and apply class action tolling here. Any standard application of tolling would permit Plaintiffs in this case to proceed with their individual claims in lieu of moving to certify a class.[13]

---

[12] The Government contends that "Plaintiffs are essentially asking the Court to allow tolling merely on the basis that the original complaint contained class allegations. *Bright* rejected that notion." MTD at 14. However, as this Court found in *Geneva Rock Products* and *Toscano* – both of which the Government neglects to cite – the very *holding* of *Bright* is that tolling is allowed on the basis that the original complaint contained class allegations.

[13] The Government offers two plainly inconsistent interpretations of *Bright* by recognizing the holding that the filing of the class complaint tolled the statute of limitations but still maintaining

Even leaving aside the holdings and reasoning of *Geneva Rock Products* and *Toscano*, the *Bright* court's rationale would be undermined if class action tolling were not applied in this case. The Federal Circuit explained that class action tolling is "most consistent with the objectives which class action procedures are meant to achieve." *Bright*, 603 F.3d at 1285. It found "the laudable goal of avoiding 'multiplicity of actions' should prevail." *Id.* Clearly, a case where the Court sets a schedule for class certification *after* the six-year statute of limitations would otherwise expire should not require individuals to file their own independent actions prior to conclusion of the class certification process. Requiring such duplicative actions would be inefficient and undermine the very goals the *Bright* court was trying to achieve. The *Bright* court also explained that it wanted to avoid anomalous differences between the conduct of class actions under the Tucker Act and the Little Tucker Act and more generally between the Court of Federal Claims and federal district courts. *Id.* at 1289. Limiting *Bright* to only those instances where a class certification motion is brought within the six-year limitations period would create such anomalous differences, as district courts do not have such a requirement.[14] For all these

---

that this position was somehow rejected by the panel. MTD at 14-15. The Government's confusion can be traced to one of the three alternative arguments made by the plaintiffs in *Bright* on appeal – an unconventional argument that *neither* tolling *nor* relation back was implicated at all in the case because the *very filing of a class complaint* satisfied the limitations requirement of section 2501 outright for all putative members of the class without further analysis. *See Bright*, 603 F.3d at 1281-82. It is a subtle distinction, but there was no doctrinal basis for plaintiffs to entirely *avoid* analysis under Rule 23 tolling doctrine or RCFC 15 and instead simply deem section 2501 satisfied *ipso facto* on filing. *Bright* rejected that novel argument while attempting to make clear that it was *not* rejecting either the tolling arguments raised by plaintiffs (which it found persuasive) or the relation back argument raised by plaintiffs (which it did not reach). *Id.* at 1283-84, 1290-91. Plaintiffs in this case are *not* offering the novel argument rejected by the Federal Circuit in *Bright*. Instead, Plaintiffs here offer both the tolling argument the *Bright* court accepted and the relation back argument it did not reach.

[14] The *Bright* court also emphasized its intention to avoid the practical problems caused by "a regime in which prospective class action plaintiffs would be charged with the task of forecasting when, during the pendency of a class action proceeding, the class certification process and opt in period would be completed[.]" *Id.* at 1288.

reasons, *Bright* – and its progeny in the Court of Federal Claims – requires application of class action tolling here.

In the alternative to its strained interpretation of *Bright*, the Government argues that *Bright* has been somehow overruled by the Supreme Court in *California Public Employees' Retirement System v. ANZ Securities, Inc.* ("*CalPERS*"), 137 S. Ct. 2042 (2017). On its face, it is not clear how *Bright* could be overruled by *CalPERS*. The question presented to the Court in *CalPERS* was whether class action tolling, which is generally available to toll the application of statutes of limitation, also applies to the "statute of repose" present in the Securities Act of 1933. The Court, by a vote of 5-4, determined that *statutes of repose are distinct from statutes of limitation* and that class action tolling did not apply to statutes of repose. *Id.* at 2055.

The *CalPERS* Court made crystal clear that its decision not to apply tolling was premised entirely on the distinction between statutes of repose – like that in the Securities Act of 1933 – and statutes of limitation – like that at issue here. As the Court reasoned,

> *The determination that the 3-year period is a statute of repose is critical in this case*, for the question whether a tolling rule applies to a given statutory time bar is one 'of statutory intent.' The purpose of a statute of repose is to create 'an absolute bar on a defendant's temporal liability[;]' and *that purpose informs the assessment of whether, and when, tolling rules may apply*.

> *In light of the purpose of a statute of repose*, the provision is in general not subject to tolling.

*Id.* at 2050 (emphasis added) (citations omitted).

If that were not a clear enough indication of the Court's intention to limit its holding to statutes of repose, the Court further observed,

> *The statute of repose transforms the analysis*. In a hypothetical case with a different statutory scheme, consisting of a single limitations period without an additional outer limit, a court's

> equitable power under *American Pipe* in many cases would authorize the relief petitioner seeks.

*Id.* at 2055 (emphasis added).  Here, of course, there is no statute of repose, but just "a single limitations period without an additional outer limit," and class action tolling applies under *Bright* and its progeny.

The Court in *CalPERS* made no mention of *Bright*, the Tucker Act, or RCFC 23.  The Government argues, however, that because the majority in *CalPERS* characterized *American Pipe* tolling as "equitable" and the Federal Circuit's decision in *Bright* hinged on class action tolling being "statutory," *Bright* is no longer good law.

The Government's argument is both too attenuated and too facile.  First, as this Court is well aware, trying to extrapolate from the reasoning in a 5-4 decision of the Supreme Court on an unrelated issue to the specific nuances of the Tucker Act's application under the FCRC is fraught with complexity.  As explained above, the *Bright* court came to its conclusion not on the basis of a mechanical equitable-statutory distinction, but after taking into account the procedural considerations and policy implications of the issue presented as well as the complicated background of cases and analysis on the issue in the context of takings law, which the Government would have this Court ignore.

Second, in referring to class action tolling as "equitable," the *CalPERS* majority was simply elaborating on the dispositive distinction between statutes of *limitation*, which are subject to various forms of tolling, including class action tolling, and statutes of *repose*, which may be tolled "only where there is a particular indication that the legislature did not intend the statute to provide complete repose but instead anticipated the extension of the statutory period under certain circumstances. . . .  For example, if the statute of repose itself contains an express exception[.]"  *Id.* at 2050.  While *American Pipe* tolling is designed to effectuate the purposes of

26

Rule 23, rather than for "equitable" reasons such as preventing unfairness or fraud, "Rule 23 does not so much as mention the extension or suspension of statutory time bars." *Id.* at 2052. The *CalPERS* majority thus used "equitable" somewhat loosely to refer to tolling that was not *expressly mandated* by the statute in question. This is different from the more precise way that the Federal Circuit used the term in *Bright*, deeming class action tolling "statutory" rather than "equitable" because it was based on the court's interpretation of Rule 23 and RCFC 23, rather than on "equitable considerations." *Bright*, 603 F.3d at 1287-88.

Indeed, extending the reasoning in *CalPERS* to apply here would amount to "doubling down" on an oversimplification and inaccuracy. Just last month, two law professors from the University of Pennsylvania published a law review article explaining how the Supreme Court's characterization of class action tolling as "equitable" in *CalPERS* is technically inaccurate and may lead to additional confusion and legal error. *See* Stephen B. Burbank & Tobias Barrington Wolff, *Class Actions, Statutes of Limitations and Repose, and Federal Common Law*, FACULTY SCHOLARSHIP, May 14, 2018, https://scholarship.law.upenn.edu/cgi/viewcontent.cgi?article =2964&context=faculty_scholarship. According to Burbank and Wolff, class action tolling is technically neither equitable *nor* statutory, but is instead federal common law designed to effectuate Rule 23 – which is very much aligned with the Federal Circuit's analysis in *Bright*. 603 F.3d at 1287-88. It was the express goal of the authors "not to demonstrate the error of the decision in *CalPERS*. It is, rather, to minimize the damage that can be caused in other cases by the Court's opinion." Burbank & Wolff at 70. Thus, this Court should *not* extrapolate from the

Court's inapplicable reasoning in *CalPERS* to undermine settled Federal Circuit law in this unrelated area.[15]

Thus, *Bright* remains good law, binding on this Court and applicable to the circumstances of this case.  The newly-named Plaintiffs' claims have been tolled during the pendency of the class action that purported to encompass them and are timely.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Government's Motion to Dismiss should be denied.

---

[15] If the Supreme Court had intended to overrule *Bright* in *CalPERS*, it would have said so. Indeed, the respective parties in that case lobbied the Court to alternatively broaden the review to include *Bright* or to limit its review to the "statutes of repose" issue to which the Court ultimately confined itself.  *See, e.g.*, Br. in Opp'n to Pet. for a Writ of Cert., *Cal. Pub. Emps.' Ret. Sys. v. Moody Inv'rs Serv., Inc.*, No. 16-373, 2016 WL 7011466, at *16-18 (S. Ct. Nov. 23, 2016) (explaining at length why *Bright* presents very different issues than those presented in *CalPERS* and discussing the importance of the distinction between statutes of repose and statutes of limitations while discouraging the Court from also engaging in the broader question of jurisdictional versus other statutes of limitations).  The Court implicitly refused the Petitioner's invitation in its petition for certiorari to also consider *Bright* in its decision, limited its holding to statutes of repose, and chose not to opine on whether its decision had any implications for jurisdictional statutes of limitations.  This Court should not accept the Government's invitation to jump to conclusions that the Supreme Court itself was unwilling to reach.  Nor has the Federal Circuit revisited *Bright* in light of the Supreme Court's unrelated decision in *CalPERS*.  Only the Supreme Court or the Federal Circuit can overrule *Bright*, and neither has done so, either expressly or by implication.

Dated:  June 1, 2018                    Respectfully submitted,


                                        */s/ J. Michael Ponder*
                                        J. MICHAEL PONDER
                                        COOK, BARKETT, PONDER & WOLZ, L.C.
                                        1610 N. Kingshighway, Suite 201
                                        P. O. Box 1180
                                        Cape Girardeau, MO 63702-1180
                                        Phone: (573) 335-7200
                                        Fax:   (573) 335-6182
                                        Email:  mponder@cbpw-law.com

                                        BENJAMIN D. BROWN
                                        LAURA ALEXANDER
                                        COHEN MILSTEIN SELLERS & TOLL PLLC
                                        1100 New York Avenue NW, Suite 500
                                        Washington, DC 20005
                                        Phone:  (202) 408-4600
                                        Fax:    (202) 408-4699
                                        Email:  bbrown@cohenmilstein.com
                                                lalexander@cohenmilstein.com

                                        *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I did on this 1st day of June, 2018, cause the above and foregoing to be sent via electronic transmission to:

SEAN C. DUFFY
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
601 D Street NW
Washington, DC 20004
Telephone: (202) 305-0445
Facsimile: (202) 305-0506
Email: sean.c.duffy@usdoj.gov

*Attorney for Defendant*

*/s/ Benjamin D. Brown*
BENJAMIN D. BROWN
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW, Suite 500
Washington, DC 20005
Phone:  (202) 408-4600
Fax:    (202) 408-4699
Email:  bbrown@cohenmilstein.com